HENDERSON v. JOHNS.

1. PLEADING — DEMURRER SHOULD SPECIFY POINT OF OBJECTION.— The general rule is that a demurrer which does not distinctly specify the grounds of objection to the complaint will be disregarded.

2. WHEN STATEMENT OF OBJECTION IN LANGUAGE OF CODE SUFFICIENT.— If, however, the complaint fails to state facts sufficient to constitute a cause of action, or if it appear that the court is without jurisdiction, a demurrer, for these reasons, in the language of the code is sufficient in form.

3. SUIT IN EQUITY — REMEDY AT LAW — JURISDICTION.— The remedy at law which defeats a suit in equity must be full, adequate and complete. Anything less than this will not be sufficient to deprive equity of jurisdiction.

4. COMPELLING DELIVERY OF PROMISSORY NOTES AND OTHER INSTRUMENTS — SPECIFIC PERFORMANCE OF CONTRACTS.— Equity may enforce the specific performance of a contract by decreeing the delivery of promissory notes and other instruments in writing to the persons entitled to the possession thereof, when an express trust in reference to the same has been created by the terms of the contract.

*Appeal from District Court of Arapahoe County.*

APPEAL from a decision overruling appellant's demur-
rer to appellee's complaint. In the court below Hugh
Butler and Anson Wolcott were joined as defendants
with appellant; the following facts being alleged in the
complaint:

"*First.* That on, to wit, the 13th day of August, 1885,
he was the owner of the undivided three-sixteenths of
the Pocohontas lode and mining claim, and the undivided
one-half of the Rockport lode and mining claim, both
situate in the Tomichi mining district, in the county of
Gunnison and state of Colorado.

"*Second.* That on the said last-mentioned day he en-
tered into a contract with the said Anson Wolcott, for
himself, and with the said Amos Henderson, by the said
Anson Wolcott, acting as his agent, and authorized
thereunto, by which he was to convey to the said Anson
Wolcott and Amos Henderson, by a good and sufficient
deed, his said above-described interest in and to the said
Pocohontas and Rockport lodes and mining claims.
That, in consideration of the said conveyance, the said
Anson Wolcott and Amos Henderson (said Wolcott act-
ing for himself, and the said Henderson acting through
his agent, as aforesaid) were to execute their two several
promissory notes unto this plaintiff — one due sixty days
after the date thereof, to wit, the 13th day of August,
1885, for $500, at the Union Bank of Greeley, at Greeley,
Colorado, with interest from said date at ten per cent.
per annum; and the other due one year after the last-
mentioned date, made payable to the order of plaintiff,
for the sum of $2,000, payable at the Union Bank of
Greeley, at Greeley, Colorado, with interest from said
date at ten per cent. per annum.

"*Third.* That at the time the said contract was entered
into, and as a part thereof, it was agreed by and between
the said plaintiff and the said Wolcott and Henderson,

as aforesaid, that the said two notes, when executed, and the said deed of conveyance, when executed and acknowledged, were to be deposited with the defendant Butler, and the same were to be held by the said defendant Butler until this plaintiff should produce to the said Butler an abstract of title showing his right to convey to the said Wolcott and Henderson the said interests in the lodes and mining claims aforesaid; whereupon, and as soon as the said plaintiff had produced to the said Butler an abstract of title showing his right to convey the said interests in the mining claims and lodes as aforesaid, the said Butler was to deliver to plaintiff the said two promissory notes, and to deliver to the defendants Wolcott and Henderson the deed of conveyance as aforesaid.

"*Fourth.* That, upon the making of the said agreement, the said plaintiff, on the 13th day of August, as aforesaid, did make, execute and acknowledge a mining deed, to the approval and satisfaction of the defendants Wolcott and Henderson, for the interests in the lodes aforesaid; a copy of which deed and the acknowledgment thereof is as follows, to wit: [Here follows a deed from plaintiff to the defendants Henderson and Wolcott, in the usual form for conveying unpatented mining property, duly acknowledged.]

"And thereupon, upon the execution and acknowledgment of the deed as aforesaid, the said Wolcott for himself, and the said Henderson by his agent, Anson Wolcott, so authorized to act, did execute their two several promissory notes, in accordance with the terms of the agreement hereinbefore set out; that is, one for the sum of $500, due sixty days after date, and one of $2,000, due one year after date; both made payable to the order of plaintiff at the Union Bank of Greeley, at Greeley, Colorado, and bearing interest from date at ten per cent. per annum. * * *

"*Fifth.* That upon the execution and acknowledgment of the said deed, and the execution of the said notes, as

aforesaid, the plaintiff and the said Wolcott and Henderson, in accordance with the terms of their said agreement, did deliver them to the defendant Hugh Butler; and the said Butler thereupon executed his receipt or acknowledgment in writing to the plaintiff and the said Wolcott and Henderson, and which receipt or acknowledgment is in the words and figures following, that is to say: [Here is given the receipt or contract of escrow signed by Mr. Butler, which is given in the opinion of the court.] And thereupon, and further in pursuance of the agreement hereinbefore set out, the said plaintiff did execute and deliver unto the said Wolcott and Henderson the following instrument in writing, to wit: [Here follows the instrument of writing signed by appellee, and copied in full in the opinion.]"

Then follows an allegation to the effect that the defendants Wolcott and Henderson entered into and took possession of and worked and mined the property described in the said deed of conveyance.

"*Sixth.* That in pursuance of the said agreement entered into by the plaintiff, and the obligation thereby upon him imposed, he did on or before the 22d day of October, A. D. 1885, produce to the said defendant Butler an abstract of title showing his right to convey to the said Henderson and Wolcott the said undivided three-sixteenths of the said Pocohontas lode, and the undivided one-half of the Rockport lode; and he did also produce to the said Hugh Butler all other evidence of right and title required of him by said Butler to satisfy and show unto him that plaintiff had a right at the date of the said contract to convey to the said Henderson and Wolcott the interests in the said mining property aforesaid; and that the said defendant Butler did on or before the last date aforesaid express himself unto the plaintiff and to the defendants Wolcott and Henderson as being perfectly satisfied that the title of this plaintiff to the properties as aforesaid was perfect, and that he had good power and lawful right to convey the same to them.

"*Seventh.* That notwithstanding the plaintiff has done everything required to be done and performed by him under the terms of the said contract, and with reference to the same, the said defendants Wolcott and Henderson did notify the said defendant Butler that he should not deliver to plaintiff the said two promissory notes, or either of them; and, because of the said notice from the said defendants, the said Butler, although he recognizes the right of the plaintiff to the possession of the said notes under the terms of the said contract, has refused, and still does refuse, and has failed, to deliver to plaintiff the said notes, or either of them, though often requested so to do.   Wherefore the plaintiff prays:

"*First,* that he have judgment against the defendant Hugh Butler, requiring him to deliver up to the plaintiff the said two promissory notes, and each of them.

"*Second,* that he have judgment against the said Wolcott and Henderson for the sum of $500 upon one of the notes aforesaid, with interest thereon from the date it became due.

"*Third,* that he have judgment for the costs of this suit against the said defendants Wolcott and Henderson, and for all other and proper relief in the premises."

The above complaint was demurred to by the defendant Henderson for the following reasons: "(1) That said complaint does not state facts sufficient to constitute a cause of action; (2) that there is a misjoinder of parties defendant to this action; (3) that several causes of action have been improperly united in this action."

Mr. H. B. JOHNSON and Mr. D. E. PARKS, for appellant.

Messrs. PATTERSON & THOMAS, for appellee.

MR. JUSTICE HAYT delivered the opinion of the court.

The causes of demurrer in this case are assigned in the language of section 49 of the Civil Code, without any specification of the particular defects relied upon to sup-

port the same; and we are asked, as a preliminary question, to pass upon the sufficiency of the statement of the second and third causes of demurrer to raise any question for the court to pass upon.   Generally, such defects as are made causes of demurrer must be taken advantage of in that manner, if they appear upon the face of the complaint, and, if they do not so appear, then by answer; otherwise they are treated as waived.   But if the complaint fail to state facts sufficient to constitute a cause of action, or if it appear that the court is without jurisdiction, the defect is so radical that the defendant is allowed to take advantage thereof at any time; and it has been held that those defects may be assigned in the language of the statute.   With these exceptions, the particular defect in the pleading must be distinctly pointed out, in order that advantage may be taken thereof by demurrer.   In other words, " when a cause of demurrer is assigned, the reason or ground of it must be stated." This was the established rule in California, from which state our code is largely borrowed.   *Brown v. Martin*, 25 Cal. 82; *Kent v. Snyder*, 30 Cal. 666.

By a familiar rule of construction, by taking this statute our legislature will be held to have adopted it as construed at that time by the court of last resort in the state from which it was taken.   This construction is also in harmony with the general practice in the trial courts of this state as it has existed for many years; and the established rule in reference to mere matters of practice ought not to be lightly cast aside by the courts, but should ordinarily be adhered to until changed by legislation.   Tested by these principles, we must hold the statement of the second and third causes of demurrer insufficient, and they will therefore be disregarded.

The real contention of the parties, however, is in reference to the sufficiency of the statement of the facts to constitute a cause of action, and this is the vital question in the case.   Among the papers that were executed and

delivered upon the 13th day of August, 1885, and which have been incorporated into the complaint, is the following, viz.:

"August 13, 1885. Having this day executed and placed in escrow a deed conveying to Amos Henderson and Anson Wolcott the undivided three-sixteenths of the Pocohontas lode, and the undivided one-half of the Rockport lode, all situate in Tomichi mining district, Gunnison county, Colorado, and the said Henderson and Wolcott having executed and placed in escrow their two promissory notes, aggregating $2,500, all being left with Hugh Butler, to be held by him until I produce a satisfactory title to said property, which I hereby undertake and agree to do. I further agree that in the mean time the said Henderson and Wolcott may enter into possession of said property, and work and mine the same.

"RUDOLPH H. JOHNS."

To whom was this title to be satisfactory? The bill is framed upon the theory that it was to be satisfactory to Mr. Butler alone, and an averment is inserted to the effect that the abstract thereafter produced satisfied Mr. Butler that the title was sufficient; while the appellant claims that the grantees in the deed, i. e., himself and Wolcott, are made the sole judges of the sufficiency of the title by this instrument. The court below seems to have adopted the former view, and, we think, correctly. The entire contract or agreement between the parties is contained in several instruments bearing the same date, and executed contemporaneously. These instruments must therefore be construed together as parts of the same transaction. By the first of these appellee conveyed to Wolcott and Henderson certain mining interests by a deed which appears from the allegations of the complaint to have been satisfactory in form to all parties, and thereupon the notes in controversy were executed by both Henderson and Wolcott, and, with the deed, placed in escrow with Mr. Butler; whereupon, as

it is alleged, Mr. Butler executed to all of said parties the following instrument:

"August 13, 1885. Received of Amos Henderson and A. Wolcott two promissory notes payable to the order of Rudolph H. Johns, dated this day — one for the sum of five hundred dollars ($500), due sixty days after date, and the other for the sum of two thousand dollars ($2,000), due one year after date; each with interest from date at the rate of ten per cent. (10) per annum, — which said notes are to be held by me and delivered to said Rudolph H. Johns, who is to produce to me an abstract of title showing his right to convey to the said Henderson and Wolcott the undivided three-sixteenths (3-16) of the Pocohontas lode, and the undivided one-half (1-2) of the Rockport lode, both of said lodes situated in Tomichi mining district, Gunnison county, Colorado, and a deed now in escrow conveying· said titles to said Henderson and Wolcott. HUGH BUTLER." As the executed deed was at the time accepted by all parties as sufficient in form, the only thing remaining for examination was the abstract of title which appellee had agreed to produce to Mr. Butler, showing his right to convey the property described in the deed. And this, we think, is the kind of title which all parties understood at the time would be acceptable; the legal title to the premises being in the United States. Mr. Butler became the custodian of all these papers by the selection and agreement of all parties. It was for him to determine when each had complied with the conditions imposed by the agreement, so as to justify a delivery of the papers. By their voluntary act he was selected as a proper person to act for all in this responsible position. His selection, under the circumstances, implies that all parties reposed the fullest confidence in his integrity, ability and discretion in discharging the delicate duties likely to devolve upon a person assuming such a place of trust; and we think a proper construction of these instruments leads to the conclusion that it was the understanding of the parties that, Butler

thus being the party agreed upon to determine the sufficiency of the abstract, his conclusion upon this question was final and binding upon both parties to the contract.

These several instruments are to receive a reasonable construction, to the end that the intent of all the parties to the contract may be effectuated so far as such intention can be ascertained from the language employed; and it is certainly more reasonable to conclude that Butler, a disinterested person, was the one whom all parties intended should determine the sufficiency of the title, rather than that this important question, upon which the whole contract was made to depend, should have been left to be arbitrarily determined by one of the parties directly interested. It follows from the construction which we place upon the contract that, when appellee produced such an abstract of title as satisfied Mr. Butler of his right to convey, the condition upon which the delivery of the notes was agreed to be made was fully met; and, having alleged these facts in his complaint, the pleading must be held sufficient in this particular.

It is argued, however, that, even under the construction which we have placed upon the contract, appellee is not entitled to a decree for specific performance of the agreement by enforcing the delivery of the notes; the contention being that there is a remedy at law by an action for damages directly upon the contract, so that a decree for the surrender of the notes would be entirely useless. The remedy at law which defeats a suit in equity must be full, adequate and complete. Anything less than this will not be sufficient to deprive equity of jurisdiction. 1 Pom. Eq. Jur. § 139. Admitting, then, for the purposes of the argument, that plaintiff might at law obtain a money judgment for the amount evidenced by the $500 note which was past due at the time of the institution of this suit, the amount evidenced by the note for $2,000 was not then due; and certainly no money judgment could be entered for that claim before its maturity. In the mean time, however, the possession

of the note might have been of great value to appellee for the purposes of negotiation, or of obtaining credit thereon. By agreement of the parties, the defendant Butler was made the trustee of an express trust; and, it sufficiently appearing that he has in his possession certain choses in action to which appellee now shows himself entitled, we think a delivery thereof may be enforced in this action.

Mr. Pomeroy, in sections 13 and 14 of his excellent work upon Specific Performance, says:

"Courts of equity will, at the suit of the persons legally entitled to them, decree the delivery up of deeds and other instruments in writing, since damages are inadequate, and the legal actions for the recovery of possession are imperfect in their operations. This equity suit to compel the specific delivery of chattels, deeds and the like possesses another great and incidental advantage over the legal remedy; since the plaintiff is not compelled, as in trover, to prove a conversion of the article, or a refusal to surrender possession of it when demanded. * * * The jurisdiction which I am describing is greatly enlarged, where a trust or fiduciary relation exists in relation to chattels, if an express trust has been created by the terms of the contract; or, if a constructive trust has arisen from the acts or omissions of the parties, equity will decree a specific performance of the contract, and compel a specific delivery of the chattels, whatever be their nature, special or common; and the same equitable relief will be granted to enforce a fiduciary duty or confidence reposed, which is not, in the strict sense of the term, a trust, as in the case of an agency."

Judge Story, in considering the jurisdiction of courts of equity to decree a delivery up of certain instruments of writing, says:

"The same doctrine applies to other instruments and securities, such as bonds, negotiable instruments, and

other evidences of property, which are improperly with-
held from the persons who have an equitable or legal
interest in them, or who have a right to have them pre-
served.    This redress a court of common law is, for the
most part, incapable of affording; since the prescribed
forms of its remedies rarely enable it to pronounce a
judgment *in rem*, in such cases, which is or can be made
effectual." 2 Story, Eq. Jur. § 703.   See, also, *Mining
Co. v. Drake*, 8 Colo. 586; *McMullen v. Vanzandt*, 73 Ill.
190.

The ruling of the district court upon the demurrer is
sustained upon principle and authority, and the judg-
ment must be affirmed.

*Affirmed.*