Decided November 18, 1895.

## SPRINKLE v. WALLACE.

[42 Pac. 487.]

ASSIGNMENT FOR CREDITORS — JURISDICTION OF EQUITY.— An assignor for creditors who has compounded and settled with his creditors cannot maintain a suit in equity against his assignee to compel a final accounting, but must proceed in the assignment matter for the accomplishment of such purpose. Sections 3173–3187, Hill's Code, prescribe a complete procedure for the administration and settlement of assigned estates, and must be considered a substitute for the equity power to compel the execution and performance of a trust in such matters.

Appeal from Gilliam: W. L. BRADSHAW, Judge.

This is in effect a suit for an accounting. On the thirty-first day of March, eighteen hundred and eighty-

eight, D. S. Sprinkle made a general assignment of all his property for the benefit of his creditors to I. R. Dawson, under the general assignment laws of the state, which trust was accepted by the assignee, who qualified and took possession of the property, and proceeded with the administration of the insolvent's estate. About January fourth, eighteen hundred and eighty-nine, Dawson, to enable the plaintiff to procure funds with which to settle with his creditors, turned over to him, through one J. H. Misner, nearly if not quite all the property of the estate, except lots six and eleven in block twelve in the town of Arlington, Gilliam County, Oregon, and in the month following plaintiff succeeded in compromising with and being released by all his creditors. He claims in this present suit that on said fourth day of January Dawson promised and agreed to turn over to and account to him for all the property, both real and personal, of whatsoever nature, that came into his hands as assignee by virtue of the assignment, but that he has failed and still fails and refuses to account for and turn over to him a considerable portion of the personal property, and wholly fails and neglects to reconvey lots six and eleven. Upon these allegations plaintiff prays an accounting, and for a decree for such balance as may be found due, and for a reconveyance of the real property. The defendant, who is Dawson's executor, demurred to the complaint, and, upon his demurrer being overruled, answered, setting up a release from plaintiff after a full and fair settlement; and, further, that defendant had filed his final report in the matter of the assignment at the first term of court after said settlement, asking, among other things, an order of the court for authority to

retransfer said real property to plaintiff. Plaintiff having obtained a decree in his favor upon these issues, the defendant appeals.        REVERSED.

For appellant there was a brief by *Messrs. Milton W. Smith* and *Cox, Cotton, Teal and Minor,* and an oral argument by *Messrs. Smith* and *Wirt Minor.*

For respondent there was a brief and an oral argument by *Messrs. J. A. Brown* and *Alfred S. Bennett.*

Opinion by MR. JUSTICE WOLVERTON.

It will be seen that this suit is in no way connected with, but is separate and distinct from, the assignment proceeding. It was instituted for the purpose of requiring a settlement and an accounting by the assignee touching the assigned estate, and of obtaining a decree directing the disposition of such portion or balance of the estate as may yet be found in his custody and under his control. The question to be determined here is whether a person, after having made a general assignment for the benefit of all his creditors under the general assignment laws of the state, and after having compounded and settled with his creditors, can maintain a suit in equity against his assignee to compel a final accounting, or must he proceed in the assignment matter still pending for the accomplishment of that purpose? Upon the one hand it is contended that this suit comes within the purview of well recognized equitable cognizance — that of compelling the execution and due performance of a trust; while upon the other it is claimed that the plaintiff should have sought his relief in the assignment matter, that the general assignment act and the acts amendatory thereof contain ample provisions for the administration and settlement

of the estates of insolvents, and that the proceedings thereby adopted are exclusive of any other for directing and requiring the execution and performance of the trust imposed under a general assignment for the benefit of creditors. It is undoubtedly true that a common-law assignment, whether with preferences or for the benefit of all creditors alike, created a trust, and that the power to compel the due observance and execution thereof was peculiarly and exclusively of equitable cognizance, and statutes regulating the manner and prescribing the conditions upon which assignments may be made do not change the rule nor curtail nor limit equitable jurisdiction touching the administration of trusts thus created. Nor is the equitable jurisdiction disturbed by statutory enactments which merely create and prescribe a new procedure for the administration and settlement of insolvent estates. In such cases the equitable dominion will continue, not as affording an exclusive but as a concurrent remedy. If, however, the statutory regulations contain negative words or other language expressly taking away the preëxisting jurisdiction, or if, upon a fair and reasonable interpretation of the whole scope of such regulations, the necessary intendment is to displace such jurisdiction, then the statutory proceedings become exclusive: 1 Pomeroy on Equity, §§ 279, 281.

With these observations in view, we will now examine the statutory enactments governing general assignments for the benefit of creditors, and determine their effect. The act entitled "An act to secure creditors a just division of the estates of debtors who convey to assignees for the benefit of creditors," was passed October eighteenth, eighteen hundred and seventy-eight, and amended February twenty-fourth, eighteen hun-

28 OR.—14.

dred and eighty-five, and, as amended, is contained in
Hill's Code, §§ 3173-3187, inclusive. Section 3173 pro-
vides that "no general assignment of property by an
insolvent, or in contemplation of insolvency, for the
benefit of creditors, shall be valid unless it be made
for the benefit of all his creditors in proportion to the
amount of their respective claims. And such assign-
ment shall have the effect to dissolve any and all at-
tachments on which judgment shall not have been
taken at the date of such assignment." When judgment
is recovered, however, in the action wherein the attach-
ment is thus discharged it is to be deemed presented,
and shall share *pro rata* with other claims. By section
3174 the assent of creditors is presumed. Section 3175
provides the manner of making the assignment, and
when creditors are not satisfied with the assignee
named by the assignor, it prescribes the manner of
selecting an assignee in his stead. Should the credi-
tors be unable to make such selection by the method
prescribed, the judge of the circuit court in which the
matter is pending is authorized to appoint. When a
new assignee is thus selected or appointed it is made
the duty of the assignee named by the debtor to as-
sign and convey to him all the property conveyed or
assigned by the debtor, and such assignee "shall pos-
sess all the powers and be subject to all the duties
imposed by this act as fully to all intents and pur-
poses as though named in the debtor's assignment."
Section 3176 provides that "the assignee shall also
forthwith file with the clerk of the circuit court of
the county where such assignment will be recorded a
true and full inventory and valuation of said estate,
under oath, as far as the same has come to his knowl-
edge, and shall then and there enter into bonds to the
State of Oregon, for the use of the creditors, in double

the amount of the inventory and valuation, with two or more sufficient sureties, to be approved by said clerk, for the faithful performance of said trust; and the assignee may thereupon proceed to perform any duties necessary to carry into effect the intention of said assignment." Sections 3177, 3178, 3179, and 3180, provide for giving notice to creditors, the filing of a report at the end of three months, giving a full and true list of all creditors proving their claims, and the settlement and adjudication of such claims. Section 3181 provides that "the assignee shall at all times be subject to the order of the court or judge, and the said court or judge may, by citation and attachment, compel the assignee from time to time to file reports of his proceedings, and of the situation and condition of the trust, and to proceed in the faithful execution of the duties required by this act." By section 3182 the court or judge is empowered to compel the appearance in person of the debtor forthwith, or at the next term, to answer under oath touching the "amount and situation of his estate, and the names of the creditors, and amount due each, with their places of residence, and may compel the delivery to the assignee of any property or estate embraced in the assignment," and section 3183 requires the assignee to file with the clerk of the court an inventory and valuation of such additional property as may come into his hands. Section 3184 provides that debts to become due may be exhibited as well as those matured, and that such claims as are not exhibited within the term of three months after publication of notice shall not participate in dividends until after payment in full of claims presented within such period and allowed. Section 3185 defines the power and authority of the assignee. Section 3186 provides that "in case

any assignee shall die before the closing of his trust, or in case any assignee shall fail or neglect, for a period of thirty days after the making of any assignment, to file an inventory and valuation, and give bonds as required by this act, the circuit court or the judge thereof of the county where such assignment may be recorded, on application of any person interested, shall appoint some person to execute the trust embraced in such assignment; and such person, on giving the bond, with sureties, as required above of the assignee, shall possess all the powers conferred on such assignee, and shall be subject to all the duties hereby imposed, as fully as though named in the assignment; and in case any surety shall be discovered insufficient, or on complaint before the court or judge it should be made to appear that any assignee is guilty of wasting or misapplying the trust estate, said court or judge may direct and require additional security, and may remove such assignee and appoint another instead; and such person so appointed, on giving bonds, shall have full power to execute such duties, and demand and sue for all estate in the hands of the person removed, and to demand and recover the amount and value of all moneys and property or estate so wasted and misapplied, which he may neglect or refuse to make satisfaction for, from such person and his sureties." Section 3187 empowers the court or judge thereof, upon the allowance of the final account of the assignee,— when it appears that the assignor has been guilty of no fraud, and that not less than fifty per cent. of the amount of indebtedness over and above the expenses of the assignment has been realized from his estate,— to make an order discharging the assignor from any further liability on account of

any indebtedness existing against him prior to the making of such assignment.

The provisions of the assignment law are thus fully set forth that its full scope and bearing may be comprehended. It is plain that it provides a complete system for the supervision, administration, and settlement of the estates of insolvents who assign for the benefit of their creditors. Indeed, the act is closely allied to an insolvent or bankrupt law, if in reality it is not such a law. It provides that when the amount realized from all the assigned property is sufficient to pay at least fifty per cent. of the indebtedness under a fair assignment, the assignor shall, upon final settlement of the estate, be thenceforth discharged of all further liability on account of any indebtedness existing against him prior to the assignment. In this respect, at least, it may be said to be a qualified bankrupt law; but whether it may be classed as an insolvent or bankrupt law or not it is not necessary for us to determine at this time. The assignment is entirely voluntary. Through no act of insolvency on the debtor's part can he be coerced into a distribution of his assets among his creditors; in this respect it bears no resemblance to an insolvent law. As before stated, the right to make a general assignment for the benefit of creditors existed at common law, but the debtor could assign with preferences. The statute circumscribes this right, and no general assignment is now valid unless made for the benefit of all creditors alike. The assignment must be in writing, duly acknowledged as conveyances of real estate, and recorded. Thus executed, and free from fraud, it divests the assignor of his estate, and thenceforth the law directs its administration. The conditions which the deed of assignment may prescribe becomes unimpor-

tant, as the law specifically fixes the conditions which shall attach to every general assignment, and the settlement of the assigned estate must proceed in accord therewith. The procedure prescribed partakes of an equitable character, and the trust created is purely of equitable cognizance. The effect and final result of the statutory administration and settlement of the insolvent estate does not materially differ from that which equity would effect, except in one very essential and important particular, namely, the assignor may be discharged of all indebtedness existing prior to the date of the assignment. This result could not be accomplished under the general rules of equitable jurisprudence. They afford no primary power or authority to discharge a debtor of his obligations, whether fifty per cent. thereof is paid out of the estate or not. But, upon a final settlement in the assignment proceedings, if the estate has been made to realize fifty per cent. of the assignor's indebtedness, the circuit court, or the judge thereof, may by an order discharge the assignor from liability on account of any indebtedness existing prior to the assignment. This is a direct benefit to the assignor contemplated by the statute, and whoever makes a general assignment will be presumed to have contemplated a discharge from prior liabilities in the event his estate is made to realize fifty per cent. of his indebtedness. Aside from this feature of the assignment law, the circuit court, or judge thereof, is clothed by its provisions with all needful power and authority to require of the assignee the faithful observance and execution of the duties of his trust. He may be compelled by citation and attachment to file reports of his proceedings from time to time, and in due time to make final settlement of the assigned estate. In case of the

assignee's death, the court or judge thereof is empowered to appoint his successor; and in case a surety shall be discovered insufficient, or if it should be made to appear that the assignee is guilty of wasting or misapplying the trust estate, the court may remove him, and appoint another in his stead, and such person so appointed may execute the duties as fully and to all intents and purposes as his predecessor, and may recover from his predecessor and his sureties the value of any property so wasted or misapplied.

It would seem from these provisions, and others that might be referred to, that the circuit court or the judge thereof possesses ample power to compel the due and faithful observance by the assignee of the duties of his trust, and a full and just settlement of the estate by him, and that the statute within itself prescribes a complete procedure for the administration and settlement of assigned estates. Considering this circumstance, and in view of the power given the court or the judge thereof to discharge the debtor from pre-existing liabilities, we believe the necessary intendment of the legislature was to take away the ordinary equity jurisdiction touching the administration, settlement, and distribution of assigned estates, and that the procedure prescribed by statute is exclusive. This seems to us to be a proper conclusion upon reason and principle. But we are not without authority for so holding. The courts of New Jersey, Wisconsin, and Illinois, under assignment acts which contain no feature whatever allying them to an insolvent or bankrupt law, have held that the statutory procedure is exclusive. See *Hoagland* v. *See,* 40 N. J. Eq. 470 (3 Atl. 513); *Lawson* v. *Stacy,* 82 Wis. 303 (51 N. W. 961 and 52 N. W. 306); *Freydendall* v. *Baldwin,* 103 Ill. 329; *Hanchett* v. *Waterbury,* 115 Ill. 220 (32 N. E. 194); *Preston* v. *Spaulding,*

120 Ill. 231 (10 N. E. 903); *Colburn* v. *Shay,* 17 Ill. App. 292. In the latter case BAILEY, J., speaking for the court, says: "The rule seems to be well settled that the jurisdiction of the county court over an assignee, and over the funds placed in his hands by the assign- ment, is exclusive." As bearing on this question see also *Rumsey* v. *Town,* 20 Fed. 562, and *Clark* v. *Stanton,* 24 Minn. 240. We have been unable to find any case holding otherwise under a statute like ours. If the plaintiff could sustain this suit regardless of the statu- tory procedure, and compel a final accounting and set- tlement by the assignee, the creditors could accom- plish the same purpose by an ordinary suit in equity, and thus deprive the circuit court, or the judge thereof acting in the assignment matter, of the opportunity if not the power of making the requisite order dis- charging the debtor from preexisting liabilities, and thus defeat one of the purposes of the statute. We think the plaintiff should have proceeded in the as- signment matter to the final adjustment and settlement of the assigned estate. The final account was filed in due time, and if the assignee was seeking to take ad- vantage of any settlement in turning over to him the property of the estate, or any part thereof, he had ample opportunity of surcharging the account for fraud or mistake, and trying out all the issues that are here made. The complaint should be dismissed, and it is so ordered.          REVERSED.