[Decided at Pendleton July 31, 1897.]

# SABIN v. ANDERSON.

(49 Pac. 870.)

Fraud.—A banker who, with knowledge of a debtor's insolvency, accepts from him sundry notes, nominally for collection, but issues a negotiable certificate of deposit for their face, with a secret agreement that the certificate shall not be transferred, and then clandestinely buys it in at a discount, is a trustee of the funds collected and is personally liable therefor to the judgment creditors of such debtor.

Appeal — Demurrer Overruled by Consent.— A demurrer interposed in the court below and subsequently overruled by consent cannot be again urged on appeal, if the complaint is sufficient to support a verdict.

Equity Jurisdiction — Statutory Construction.— The right to prosecute in a court of equity a creditors' bill to uncover assets fraudulently conveyed, and to compel an accounting, was not superseded by the garnishment and attachment laws, since a legislative intention that it should be so superseded does not appear, and in the absence of such intent the jurisdiction of equity is not abrogated by the creation of a new legal remedy: *Sprinkle* v. *Wallace*, 28 Or. 201, applied.

Adequate Remedy at Law.— Garnishment and attachment statutes do not afford an adequate remedy at law to uncover assets fraudulently concealed, and to compel an accounting, for by their means the creditor cannot, as he can by a creditor's bill in equity, both unmask the fraud and prevent the disposal of the property during litigation.

Accounting by Fraudulent Grantee — Credits.— A banker who knowingly received notes on deposit from a failing debtor, in pursuance of a scheme to defraud the creditors of the latter, and issued therefor a negotiable certificate of deposit, under an agreement that it was to be paid from the proceeds of such notes, will not, in a suit by creditors for an accounting, be credited with an amount secretly paid to get back such certificate, because he feared the debtor would transfer it.

From Umatilla: Stephen A. Lowell, Judge.

Suit by Robert L. Sabin against Wm. Anderson and others to uncover assets alleged to have been fraudulently conveyed, and for an accounting. From a decree for the plaintiff, defendants appeal.

AFFIRMED.

For appellants there was an oral argument by *Mr. Robert J. Slater.*

For respondent there was a brief over the names of *Wm. F. Butcher*, and *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Butcher.*

MR. JUSTICE WOLVERTON delivered the opinion.

In February, 1889, the defendants, William Anderson and D. B. Watson, were partners, and engaged in the mercantile business at Adams in Umatilla County, Oregon. About that time Watson sold his interest in the business, including the accounts, to Anderson, who assumed the payment of the firm's indebtedness, and continued the business until the early part of June, and in the meantime contracted other indebtedness. On July 5 the plaintiff, to whom had been assigned the claims of creditors of Anderson & Watson and of Anderson individually, began actions against them, in which writs of attachment were issued, and notices of garnishment served upon L. D. Lively and J. H. Bently, two of the defendants herein, who were doing a banking business as partners under the firm name of the Umatilla County Bank. Proceedings under the garnishment were three times set in operation to require them to

answer touching any property of Anderson and Anderson & Watson in their hands subject to garnishment, but were as many times dismissed upon their motion, and in neither instance did they come to trial upon the merits. The final dismissal was affected June 10, 1893, and four days thereafter judgments were given and entered against defendants in said actions, upon which executions were duly issued, and returned nulla bona, and it is alleged that all defendants are insolvent except Lively, who has property consisting of real estate and bank stock acquired largely with the proceeds of certain promissory notes transferred by Anderson to the Umatilla County Bank in fraud of plaintiff's assignors. This suit was instituted January 15, 1894, and the court below found that Lively & Bently had collected the notes, and were trustees of the funds derived therefrom, and entered a personal decree against them for the amount thereof, with accrued interest from the date of the collection. From this decree the defendants appeal.

The proof clearly discloses and establishes the following facts: Prior to June 18 and 24, 1889, Anderson was the owner of a large number of accounts, including those purchased from the firm of Anderson & Watson, for many of which he procured from the debtors their negotiable promissory notes. On June 18 Anderson went with a number of these notes, aggregating $5,289.02, to the Umatilla County Bank, and it was then and there agreed between him and the proprietors of the bank that the bank should collect the notes, and account to Anderson for the proceeds thereof on November 20, 1889, or for the notes, if any

remained uncollected, for which services it was to receive a commission of 5 per cent. upon the amount collected. The bank, however, by its cashier, J. H. Bently, gave Anderson the ordinary cash certificate of deposit for a sum equivalent to said amount, negotiable in form, and made payable to the order of himself on the date last named. It was further agreed that this certificate should not be negotiated by Anderson, or, if he should negotiate it, that he should explain to the purchaser the real transaction and agreement between him and the bank touching the deposit and collection of the notes, and the manner in which the certificate should be redeemed by the bank. On the twenty-fourth day of June, Anderson deposited with the bank another lot of notes aggregating $1,190.20, upon like conditions, and for which a like certificate was issued. Subsequently, but prior to the maturity of the certificates, the bank, becoming alarmed lest Anderson should transfer them to a bona fide holder, sent an agent to purchase them apparently for one E. De Peat, but in reality for itself, for which purpose the funds of the bank were used. The first certificate was secured November 16, for which the bank paid Anderson $2,150, and the second December 5, for $650. The testimony shows beyond peradventure that Anderson, at the time of the deposit of these notes with the bank, placed them there under the conditions above delineated for the purpose of concealing them and putting them beyond the reach of his creditors. It was stoutly contended, however, that the bank, or its proprietors, Lively & Bently, did not share with Anderson in such purpose, and that the transac-

tion upon their part was bona fide, and without knowledge of the insolvency of Anderson & Watson, or of the purpose or intent of the said Anderson in seeking and entering into such an arrangement or agreement with the bank. But we think Lively & Bently were particeps criminis with Anderson in the scheme to defraud his creditors. They allege in their answer that Anderson sold the notes to the bank, and that the bank gave the cash certificates of deposit as a consideration for their purchase. Mr. Lively, however, virtually admits by his testimony that the certificates did not express the real nature of the transaction. Soon after their issuance he endeavored to have them replaced by another, which he testified contained these words: "All unpaid notes indorsed by Anderson to be turned in as cash on this certificate when presented for payment," and assigned as a reason for his solicitude in securing the exchange that he, since the transaction, learned that Anderson had become insolvent, and hence that his indorsements upon the notes sold to the bank were of no value; and further explained that, "as all the unpaid notes should be turned in as cash, and they—the certificates of deposit—being transferable, and he not being responsible, we thought it better." He claims that the bank relied upon Anderson's indorsement to make it whole for any notes that should prove to be uncollectible, but the fact is that none of the notes, although many of them fell due prior to the maturity of the certificates, were ever protested for nonpayment, so as to hold Anderson, and no attempt of the kind was ever made, so far as the testimony discloses. These transactions are not

altogether in harmony with the idea of a direct purchase of the notes by the bank. But beyond this the plaintiff produced and put in evidence a copy of the certificate with which Mr. Lively endeavored to replace those first issued. Omitting date and signature, it is as follows, to wit: "William Anderson has deposited in this bank sixty-four hundred and seventy-nine & ₇₉⁄₁₀₀ dollars in notes for collection, payable to the order of himself on return of this certificate, properly endorsed, Nov. 20th, '89; all unpaid notes to be turned in as cash on this certificate when it is presented for collection. Not subject to check." And this is in accord with the real transaction as it was evidently understood between the parties, and as Bently admitted it to be prior to the severance of his relations with the firm of Lively & Bently. So we take it that the transfer of these notes to the bank was made by Anderson for the purpose of concealing and placing them beyond the reach of his creditors, and thereby to defraud them, and that Messrs. Lively & Bently were cognizant of his purpose, and participated in the scheme with intent to aid and assist him in its full accomplishment.

Two defenses are interposed. The first is that Lively & Bently were bona fide purchasers of the notes for value, without notice of Anderson's intended fraud, and this we have disposed of upon the evidence; and the second is that plaintiff has an adequate remedy at aw by way of attachment, and hence that he cannot maintain the suit.

It was, however, also contended that the complaint does not state facts sufficient to constitute a cause of

suit. The record shows that a demurrer for that cause was interposed, but was overruled by consent of parties. The defendants thereupon answered, and no further objection was made to the sufficiency of the complaint until the trial in this court. Under these circumstances, if the complaint will support a verdict, it should stand; and we have no doubt of its sufficiency for that purpose.

It is urged that a creditors' bill will not lie to reach to the negotiable promissory notes of a debtor in the hands of a third person for the purpose of subjecting them to the payment of their claims and demands, but that question is not here for solution. The notes which were transferred by Anderson to the bank were all paid prior to the commencement of this suit, and the money collected thereon is all that Lively & Bently now have in their hands.

Was the plaintiff's remedy at law by attachment adequate? It may be premised that the defendants Lively & Bently claimed the ownership of these notes by purchase from Anderson, and that the latter had no interest in the proceeds thereof. It was not known to the plaintiff what amount of these funds Lively & Bently had in their hands, and an accounting was necessary, so that the jurisdiction of a court of equity to entertain a creditors' bill as it existed at common law was clear upon two grounds: *First,* to determine the nature of the transaction, whether it was intended as a fraud upon the creditors, and, *second,* to compel an accounting; and, unless this remedy is superseded by the one by attachment provided for by the statute, plaintiff is still entitled to invoke it. It is a rule of

law well established that where a new power is conferred upon the law courts, unless the statute conferring it contains negative words, or other language expressly taking away the pre-existing equitable jurisdiction, or unless the legislative intent to abolish the jurisdiction is clearly manifest from a consideration of the whole scope of the enactment, its reasonable construction, and its operation, the former jurisdiction of equity will continue unabridged: 1 Pomeroy's Equity Jurisprudence, § 279; *Sprinkle* v. *Wallace*, 28 Or. 201 (42 Pac. 487); *Union Passenger Railway Company* v. *Mayor*, 71 Md. 238 (17 Atl. 933); *Latham* v. *McGinnis*, 29 Ill. App. 152; *McNab* v. *Heald*, 41 Ill. 326; *Monroe* v. *Reid*, 46 Neb. 316 (64 N. W. 983); *Ludes* v. *Hood*, 29 Kan. 49. In such case the statutory remedy is regarded as cumulative, and the equitable dominion will continue as affording a concurrent remedy: *Sprinkle* v. *Wallace*, 28 Or. 201 (42 Pac. 487); *Heroy* v. *Gibson*, 10 Bosw. 591; High on Receivers, § 401; *Feldenheimer* v. *Tressel*, 6 Dak. 265 (43 N. W. 94). Without further elaboration, it is clear that the legislature did not intend, in providing for attachment and garnishment at law, to supersede the jurisdiction to uncover assets when transferred in fraud of creditors, and to compel an accounting.

Further than this, the remedy at law which will in any event preclude the equitable jurisdiction must be plain, adequate, and complete. It must be adapted to the particular exigency, and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity: *McKinney* v. *Curtiss*, 60 Mich. 611 (27 N. W. 691); *Gullickson* v. *Madsen*, 87

Wis. 19 (57 N. W. 965); *Hodges* v. *Kowing*, 58 Conn.
12 (7 L. R. A. 87, 18 Atl. 979); *Fitzmaurice* v. *Mosier*,
116 Ind. 363 (9 Am. St. Rep. 854, 16 N. E. 175, and
19 N. E. 180); *Gormley* v. *Clark*, 134 U. S. 338 (10
Sup. Ct. 554); *Kilbourn* v. *Sunderland*, 130 U. S. 505,
514 (9 Sup. Ct. 594); *Warner* v. *McMullin*, 131 Pa. St.
370, 382 (18 Atl. 1056); *Henderson* v. *Johns*, 13 Colo.
280 (22 Pac. 461). But the remedy by attachment is
not as efficient as by suit in the nature of a creditor's
bill. In pursuing it in this case under the garnish-
ment proceedings the plaintiff was confronted with
the alleged sale of these notes, which was fraudulent
as to him, and their collection, thus rendering an
account necessary to determine what amount of the
funds still remained in the hands of the garnishees.
In such proceedings a personal judgment may be en-
tered against the garnishee for the value of property
of the debtor found in his possession, but the remedy
against his disposal thereof in the meantime is not as
efficient as in equity, where it may be taken into cus-
tody, especially after judgment and issue of execution
and return nulla bona: *Hadden* v. *Spader*, 20 Johns.
554. In further illustration of the proposition, see
*Pierstoff* v. *Jorges*, 86 Wis. 128 (39 Am. St. Rep. 881,
56 N. W. 735); *Gullickson* v. *Madsen*, 87 Wis. 19 (57
N. W. 965), and *Feldenheimer* v. *Tressel*, 6 Dak. 265
(43 N. W. 94). True, in the present case the defend-
ant had entered upon the prosecution of garnishee
proceedings against Lively & Bently upon three dif-
ferent occasions, and had proceeded in one, and per-
haps two, instances far enough to obtain their writ-
ten answers to the petition for a citation requiring

their appearance, and to interrogatories subsequently served; but in neither instance did the matter come to trial upon its merits, and, in the view we have taken of the law, plaintiff was not precluded from pursuing his remedy in equity. Where the fraudulent grantee or donee has sold the property conveyed to him, or mingled it with his own, a decree will be rendered charging him personally with the value thereof, and he may be called upon to account for just what property has come into his hands: 5 Enc. Pl. & Prac. 601; *Dilworth* v. *Curts*, 139 Ill. 508 (29 N. E. 861).

But Lively & Bently contend that, in any event, they ought to have credit in the account for the $2,800 which they paid to Anderson for the recovery of the outstanding certificates issued by the bank. The functions of a creditors' bill are to pursue a fund, or to restore a right lost by law, and not to visit the fraudulent grantee with damages. If a person has property of which he has obtained possession with a purpose to defraud the creditors of another, he is under no legal obligation to turn it over to such creditors, but, if he is honest, he will restore it to him to whom it belongs, that it may be applied in satisfaction of their demands, if wanted. Now, we presume that if such a person had honestly parted with what he fraudulently received, before the rights of the creditors are fixed by judgment and the filing of the bill, he ought to be exonerated from further liability: *Swift* v. *Holdridge*, 10 Ohio, 231 (36 Am. Dec. 85). But that is not what Lively & Bently have done in this instance. What they did was the result of their solicitude to protect themselves against the acts of

Anderson, and not to restore property held by them in fraud of creditors: *How* v. *Camp*, Walk. Ch. 427, is a case similar in principle, where lands had been conveyed in fraud of creditors, and the fraudulent grantee had disposed of a portion of them to bona fide purchasers, and paid a portion of the purchase money over to the fraudulent grantor. In taking the account the court refused to allow credit for the money thus paid over, and, discussing the case, the chancellor says: "This is not a case of constructive but positive fraud against creditors, in which the grantee is particeps criminis. When that is the case, the rule is not to allow the grantee, in taking the account, for any advances made to the grantor, as it would, to the extent of such allowance, be giving effect to the fraud, and remove the chief obstacle to third persons assisting debtors in defrauding their creditors, by indemnifying them against pecuniary loss in case of detection." Spencer, J., in *Sands* v. *Codwise*, 4 Johns. 599 (4 Am. Dec. 305), says: "It would not become a court of equity to take a single step to save harmless a party detected in a fraudulent combination to cheat. No right can be deduced from an act founded in actual fraud." So it is here. This court, in the exercise of equitable jurisdiction, cannot take an account between the parties to the fraud for the purpose of reimbursing the fraudulent assignees for any money they may have expended for the sole protection of themselves without regard to the right of the creditors. The decree of the court below will be affirmed.

Affirmed.