Argued December 31, 1919, reversed and dismissed February 24, former opinion modified and rehearing denied April 13, 1920.

## BURR *v.* MUTUAL LIFE INS. CO.

(187 Pac. 850; 188 Pac. 962.)

**Insurance—Payment of Cash Surrender Value of Policy upon False Affidavit as to Death of Beneficiaries to Whom Paid-up Policy had been Issued Held Ineffective to Invalidate Paid-up Policy.**

1. Where insurer issued paid-up policy, stipulating that the consideration had been paid by beneficiaries, and agreeing to pay to beneficiaries specified amount upon death of insured, and where insured subsequently delivered policy to insurer upon receipt of the cash surrender value of the policy, upon insured's false affidavit that the beneficiaries were dead, the transaction was ineffective to surrender or cancel the policy.

**Insurance—Equity will not Revive Policy Wrongfully Surrendered to Insurer, Remedy at Law Being Adequate.**

2. Where insurer issued paid-up policy, stipulating that the consideration had been paid by beneficiaries, and agreeing to pay specified amount upon death of insured, and where insured subsequently delivered policy to insurer upon receipt of the cash value of the policy, upon insured's false affidavit that the beneficiaries were dead, equity had no jurisdiction of suit to restore and revive the policy, since the transaction did not operate to surrender or cancel the policy, and since, the policy being in force, the beneficiaries had a complete and adequate remedy at law.

ON PETITION FOR REHEARING.

**Appeal and Error—Court Reversing Judgment in Equitable Action Triable at Law will Remand Case for Trial.**

3. In beneficiary's action in equity to revive and restore canceled policy and to recover thereon, Supreme Court, in reversing judgment for beneficiary on ground that beneficiary's remedy was an action at law, will remand cause under Laws of 1917, page 126, so that beneficiary may have case tried at law, with permission to beneficiary to amend her pleadings.

From Multnomah: Robert Tucker, Judge.

Department 2.

The defendant is a life insurance corporation organized under the laws of the State of New York and is now doing business in the State of Oregon. The plaintiff is a resident of this state, the daughter of Peter A. Josephs, now deceased, and the sister of James and John E. Josephs, who are residents of California.

On June 16, 1868, the defendant issued its policy on the life of Peter A. Josephs for $5,000, payable to his said children. This policy was conditioned upon the payment of the stipulated premiums, and in 1871, for failure to pay them, it was surrendered. The defendant then issued its paid-up policy No. 123,654, for the sum of $400, payable to James and John E. Josephs and this plaintiff. The face of the policy reads in part as follows:

"The Mutual Life Insurance Company of New York in consideration of the representations made to them in the application for this policy, and of the sum of one hundred and forty dollars and fifty cents, to them duly paid by James, Harriett and John E. Josephs, children of Peter A. Josephs, do insure the life of the said Peter A. Josephs of St. Joseph in the county of Buchanan, State of Missouri, in the amount of four hundred dollars, for the term of his natural life. And the said Company do hereby promise and agree to pay the amount of the said insurance at their office in the

city of New York, to the assured, their executors, administrators or assigns, in sixty days after due notice and proof of the death of the said person whose life is hereby insured.''

On August 6, 1888, this policy was delivered by the insured, Peter A. Josephs, to the defendant, without the knowledge or consent of either of the beneficiaries. It was accompanied by his affidavit to the effect that the beneficiaries were then all dead and had died in their infancy. Without investigation and accepting this as true, the defendant at that time paid the insured the sum of $183, then the cash value of the policy, in consideration of which the document was surrendered to the defendant.

On December 24, 1895, Peter A. Josephs died in the State of New York, where he was in business after moving from California, and an administrator of his estate was appointed there. James and John E. Josephs were then residents of California, and the plaintiff, of the State of Oregon. After the death of their father they at once instituted a vigorous search for the original $5,000 policy which the deceased had shown to the plaintiff when she was a child. The testimony is conclusive that she did not know the name of the insurance company which issued the policy or any of the terms or conditions thereof except that with her brothers she was named as a beneficiary. Although diligent search was made and numerous letters were written, no one was found who knew of the actual existence of such a policy, or the name of the company which had issued the $5,000 policy which was shown to the plaintiff by her father. The plaintiff employed a Portland attorney to assist her in locating the policy, but without success. Finally she went to Mr. Samuels, a prominent insurance man of Portland, to whom she

related the facts and from whom she obtained a list of all the insurance companies doing business in the United States in 1868, some 32 in number. She then addressed a circular letter of inquiry to each one of them and in answer to the letter which she wrote the defendant she learned for the first time that the $5,000 policy had been surrendered and in lieu thereof a paid-up cash policy of $400 was issued and that based upon the false affidavit of her father to the effect that the beneficiaries therein, his children, had all died in infancy, the company paid to him $183, in consideration of which he delivered to the defendant the $400 paid-up policy, and for such reason the defendant denied all liability thereon.

The plaintiff then for the first time furnished "due notice and proof of the death of the said person whose life" was thereby insured, and for failure of the defendant to pay the amount of the policy, the plaintiff brought this suit, alleging all of the facts above set forth. She prays for a decree restoring and reviving the policy and for the sum of $400, with interest from December 24, 1895, at the rate of 6 per cent per annum, as well as such other and further relief as to the court may seem equitable.

To this complaint the defendant filed a demurrer on the following grounds:

"(1) Said complaint shows on its face that plaintiff is pursuing a stale demand.

"(2) More than six years have elapsed since the accrual of the cause of action stated in said complaint, as appears from the face of said complaint.

"(3) Said complaint fails to state facts sufficient to constitute a cause of suit.

"(4) Said complaint shows on its face that the cause of suit herein alleged is barred by laches."

After argument the demurrer was overruled. The defendant then answered, admitting the issuance of the $5,000 policy in 1868, the surrender thereof, and the issuance of the $400 paid-up policy in 1871, and alleging that the latter policy was surrendered on August 6, 1888, by the insured, upon his said affidavit and the payment to him of $183, by reason of which the defendant denies all liability. As a further and separate answer it is pleaded that the plaintiff is pursuing a stale claim; that it is barred by the statute of limitations of the State of California, and that of the State of Oregon. The defendant prayed to be discharged.

After the plaintiff filed a reply, testimony was taken and a decree was rendered in favor of the plaintiff for $400, the face value of the policy. The defendant appeals, contending that the court erred: First, in decreeing that the policy is a valid, existing contract; second, in holding that the surrender and cancellation thereof were void; third, in rendering a decree in favor of the plaintiff; and fourth, in not giving a decree in favor of the defendant.        Reversed and Dismissed.

For appellant there was a brief over the name of *Messrs. Snow, Bronaugh & Thompson,* with an oral argument by *Mr. Earl C. Bronaugh.*

For respondent there was a brief over the names of *Mr. Omar C. Spencer* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Spencer.*

JOHNS, J.—The policy in question specifically recites that, in consideration of $140.50 ''duly paid by James, Harriett and John E. Josephs, children of said Peter A. Josephs,'' the company insured the life of the said Peter A. Josephs in the sum of $400. Thus

it is stipulated and agreed that the consideration of the policy was paid by the plaintiff and her brothers. By its terms the policy was fully paid up and the amount named was to be turned over to James, Harriett and John E. Josephs on the death of their father, Peter A. Josephs. There is no provision by which the $400 or any part of it should be paid at any time to anyone else.

1. The affidavit which the father executed as to the death of his children was false; yet, based upon that declaration and relying thereon, the defendant paid to the father $183, on receipt of which he delivered the policy to the company. That proceeding was null and void. The named children were then and are now living. Under such a state of facts the payment to the father would not and could not operate to surrender or cancel the policy. The beneficiaries never knew the actual facts until the plaintiff received the defendant's answer to her circular letter of September 23, 1915. On receipt of that communication from the plaintiff, the defendant promptly advised her of all of the facts. There is no testimony tending to show that the defendant ever refused her any information, sought to mislead her or to conceal any fact which would necessitate a bill of discovery or founded upon which a suit could be sustained.

By the express terms of the policy the company promised and agreed "to pay the amount of the said insurance at their office in the City of New York, to the assured, their executors, administrators or assigns, in sixty days after due notice and proof of the death of the said person whose life is hereby insured." This was a direct obligation on the part of the defendant, for a valuable consideration, to pay the $400 to the

children of Peter A. Josephs upon his death. To obtain the payment of this amount the beneficiaries had a complete and adequate remedy at law; and in any action therefor the payment to the father would not constitute a defense. That whole transaction was void. The policy was not surrendered and could not be canceled thereby, and the company could not thus acquire title to it.

2. In the instant case the defendant filed a demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of suit, and it has relied upon that demurrer in the Circuit Court and in the brief and argument in this court. As the plaintiff had a complete and adequate remedy at law, a court of equity does not have jurisdiction of this cause, and the demurrer should have been sustained. The decree is reversed and the complaint is dismissed without prejudice.                    REVERSED AND DISMISSED.

McBRIDE, C. J., and BENNETT, J., concur.

BEAN, J., Dissenting.—It is contended by counsel for defendant that a suit in equity cannot be maintained by plaintiff, but that the remedy was by an action at law after the death of the insured and within the time prescribed by the statute of limitations.

The policy of insurance in question was wrongfully surrendered by the insured, and canceled by the insurer without right or authority, and without the knowledge or consent of the beneficiaries, and a suit in equity can be maintained to set aside the surrender and cancellation of the policy and revive or reinstate the instrument and recover thereon: 14 R. C. L., p. 1014, § 193; 25 Cyc. 792; 14 Standard Ency. of Procedure, 15; *Mausbach* v. *Metropolitan Life Ins. Co.,* 53 How. Pr.

(N. Y.) 496; *Cohen* v. *New York Mutual Life Ins. Co.,* 50 N. Y. 610 (10 Am. Rep. 522); *Whitehead* v. *New York Life Ins. Co.,* 63 How. Pr. (N. Y.) 394; Id., 33 Hun (N. Y.), 425; Id., 102 N. Y. 143 (6 N. E. 267, 55 Am. Rep. 787); *Stilwell* v. *Mutual Life Ins. Co. of N. Y.,* 72 N. Y. 385; *Tabor* v. *Michigan Mutual Life Ins. Co.,* 44 Mich. 324 (6 N. W. 830).

In case of a wrongful repudiation of a policy of insurance by the insurer an option is given to the insured, or beneficiary having a vested interest therein, to pursue different remedies, but the right to say what course shall be pursued is not awarded to the company issuing the policy, which has wrongfully canceled such policy and denied its liability thereon, and obtained a receipt from the insured indorsed on the policy.

The rule is stated in 25 Cyc. 792 thus:

"Remedies for Wrongful Surrender, Cancellation, or Termination of Contract—a. Action to Set Aside Cancellation or Surrender. A suit in equity may be maintained by the insured or the beneficiary, according to the circumstances, to set aside a surrender and cancellation of a policy and revive or reinstate the same, and to recover what may be due thereon, where the surrender and cancellation was procured by fraud on the part of the company or its agent, * * or where the surrender was wrongfully made by the insured without the assent of the beneficiary * * ."

See *Day* v. *Connecticut Gen. L. Ins. Co.,* 45 Conn. 480 (29 Am. Rep. 693); *Meyer* v. *Knickerbocker L. Ins. Co.,* 73 N. Y. 516 (29 Am. Rep. 200); *Hayner* v. *American Popular L. Ins. Co.,* 69 N. Y. 435; *Union Cent. L. Ins. Co.* v. *Poettker,* 5 Ohio Dec. (Reprint) 263 (4 Am. Law Rec. 109). In 14 Standard Encyclopedia of Procedure, page 15, the author states:

"Where an unauthorized surrender of a policy of life insurance operates as a fraud upon the beneficiary, equity will decree a revival and enforcement of the original policy."

It is insisted on behalf of the defendant company, that the remedy of the plaintiff, if any, is at law. It does not fill the complement to say there is a remedy at law. Such legal remedy, both in respect to the relief to be finally obtained, and the manner of obtaining it, must be as practical and efficient as the relief which a suit in equity would afford under like circumstances, or the jurisdiction in equity may be exercised: *South Portland Lbr. Co.* v. *Munger,* 36 Or. 457, at page 473 (60 Pac. 5, at page 8), Mr. Justice WOLVERTON says:

"The remedy at law to which the statute alludes must be plain, adequate, and complete, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. It is not enough that there is a remedy at law: *Boyce's Exrs.* v. *Grundy,* 28 U. S. (3 Pet.) 210 (7 L. Ed. 655). Mr. Chief Justice FULLER, in *Gormley* v. *Clark,* 134 U. S. 338, 349 (33 L. Ed. 909, 914, 10 Sup. Ct. Rep. 554, 557), states the doctrine thus: 'The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances.' See, also, *Kilbourn* v. *Sunderland,* 130 U. S. 505, 514 (32 L. Ed. 1005, 9 Sup. Ct. Rep. 594); *Watson* v. *Sutherland,* 72 U. S. (5 Wall.) 74, 18 L. Ed. 580); *Witter* v. *Arnett,* 8 Ark. 57. In *Henderson* v. *Johns,* 13 Colo. 280 (22 Pac. 461), it is said: 'The remedy at law which defeats a suit in equity must be full, adequate, and complete. Anything less than this will not be sufficient to deprive equity of jurisdiction.' And again, in 11 Am. & Eng. Ency. Law (2 ed.), 200, the learned author says: 'The construction given to this phrase "adequate remedy" by the courts requires that the remedy at law must be as

practical and efficient as the remedy afforded by chancery, in order to exclude the latter from jurisdiction.' "

See *Hall* v. *Dunn*, 52 Or. 475 (97 Pac. 811, 25 L. R. A. (N. S.) 193).

Defendant in its answer admits—

"That on August 6, 1888, the said Peter A. Josephs made and executed an affidavit before a notary public in the city, county and State of New York stating that James, Harriett and John E. Josephs, children of said Peter A. Josephs, were all dead, having died in infancy, and that said affidavit was thereafter by the said Peter A. Josephs filed with defendant, and thereupon, on August 9, 1888, said paid-up policy numbered 123,654, for $400.00 was returned by the said Peter A. Josephs to defendant, and defendant thereupon paid to the said Peter A. Josephs the sum of $183, being the full surrender value of said policy."

In effect, the defendant asserts that the policy was paid and is dead, and asks that the question of restoring it to life be submitted to a court of law and tried by a jury. In the view of the writer such a trial before a jury would be a very inefficient and ineffectual remedy.

After the present suit has been determined and the cancellation of the policy declared "null and void" according to the majority opinion, the plaintiff might be in a better position. Until then, the defendant having possession of the receipted policy, the plaintiff would be in a crippled condition for a legal battle.

While it may be true that the defendant company never intentionally concealed any fact from the beneficiaries, the natural result of the wrongful cancellation of the policy served to obliterate it or hide the same from them for a period of about twenty years. On account of this the defendant asserts that the plaintiff is guilty of laches and cannot recover. The plain-

tiff is not barred by laches: 1 Pomeroy Eq. Juris.
(4 ed.), §§ 419, 424; 5 Pomeroy Eq. Juris. (4 ed.),
§§ 26, 35.

According to the terms of the contract, the cause
of action accrued sixty days after proof of death. The
limitation fixed by the statute for enforcing payment
had not expired when this suit was instituted.

It may as well be said that the insurance company
should have consulted the beneficiaries before attempt-
ing to cancel the policy, and that it could easily have
found out that they were alive, as to say that the
beneficiaries should have consulted the records of in-
surance of the whole world and found the hidden policy
in the possession of the defendant company. The
company had the names of the beneficiaries and could
easily have written to or about them. The beneficiaries
did not know the name of the insurer. It was not
through their fault that the policy slumbered in its
grave for years, but owing to the active wrong of the
company, although not intentional, in canceling the
policy at the request of one who had no authority or
right to make the same, and that without making any
investigation as to the existence of the persons in-
terested whose names it had written in the policy.
Such conduct on the part of the company operated as
a fraud upon those entitled to the benefit of the policy.
An insured person who is not always familiar with the
intricate requirements of a policy of insurance is
usually deemed to know the terms of a policy, and al-
though the affidavit showed the reverse, it would not
seem to be too strict a rule to require an insurer to
observe the main contents of a policy which it has
issued. If the company had read the policy, it would
have observed that the beneficiaries could not have

died in early infancy, and 1 per cent of the effort put forth by plaintiff would have disclosed to the company that the beneficiaries were very much alive. The effect of the attempted cancellation evidently was to mislead the beneficiaries and prevent them from asserting their rights for about twenty years. As soon as they had knowledge of the situation, they acted promptly and commenced suit. It does not appear that the beneficiaries were guilty of laches or inexcusable delay. They were not at fault in this respect. In 5 Pomeroy's Eq. Juris. (3 ed.), Section 26, it is stated:

"A person cannot be deprived of his remedy in equity on the ground of laches unless it appears that he had knowledge of his rights, as one cannot acquiesce in the performance of an act of which he is ignorant, so that one cannot be said to neglect the prosecution of a remedy when he has no knowledge that his rights have been invaded, excepting always that his want of knowledge is not the result of his own culpable negligence."

In Section 35, the same author says:

"It has been held that, where the party interposing the defense of laches has contributed to or caused the delay, he cannot take advantage of it."

As said in *Cohen* v. *New York Mutual Life Ins. Co.,* 50 N. Y. 610 (10 Am. Rep. 522):

"Courts of equity depart from the ordinary rules by which their jurisdiction is hedged in, in order to do equity between suitors, and whether a proper case is made for the exercise of the equitable powers of the court, necessarily depends upon the circumstances."

The circumstances of the present case are peculiar and present strong reasons why a court of equity should lend its aid. By reference to the letter of October 5, 1915, in response to the letter of September 23d

from Mrs. Burr, we find a statement of the insurance company that, "The second policy was surrendered to the company for cash in 1888," and the letter further states that if these policies were actually on the life of the father, "you will see that they are of no value." So that, not having possession of the policy, it was necessary, in the face of the statement that there was no value to the beneficiaries in this policy, to get possession of the writing and the record and the lost instrument, to the end and for the purpose of reviving and establishing the policy in full force, and this could only be determined at the filing of complaint in equity, which was done; and, the court having assumed jurisdiction because the writing was not at hand, it is proper to retain jurisdiction for the purpose of working out the remedies which in good conscience ought to be administered.

By its letter the insurance company claimed the benefit of the payment and cancellation of the policy which it had negligently made, and denied responsibility upon its written contract for which it had been paid to protect, in a measure, fatherless children from want. The position it thereby assumed was at least analogous to that of a sacred trust. I doubt if the company really wishes to be recreant to its duty, if it sees such duty.

It is stated in the majority opinion that there is no showing that defendant "sought to mislead" plaintiff. The company, however, represented to plaintiff that the policy was valueless, and thereby endeavored to silence the beneficiaries for another long period, and adopted the fraud of the insured, and claimed the benefit of the long interment of the policy caused by its negligence: See *Tabor* v. *Michigan Mutual Life*

*Ins. Co.,* 44 Mich. 324 (6 N. W. 830). The decree of the lower court should be affirmed.

For these reasons I am impelled to withhold my assent to the conclusion reached in the opinion of Mr. Justice JOHNS.

———

Modified and rehearing denied April 13, 1920.

PETITION FOR REHEARING.

(188 Pac. 962.)

Department 2.

On petition for rehearing, former opinion modified and rehearing denied.

MODIFIED.   REHEARING DENIED.

*Messrs. Carey & Kerr* and *Mr. Omar C. Spencer,* for the petition.

*Messrs. Snow, Bronaugh & Thompson, contra.*

JOHNS, J.—In answer to the petition for rehearing, there is one feature of the former opinion which should be corrected. The complaint was founded upon the policy of life insurance, and there is no allegation or proof that the defendant was ever asked, or that it refused, to furnish a copy of the original policy or to give any information concerning it. Under the provisions of Chapter 95, Laws of 1917, the plaintiff is entitled to have the cause remanded, to file an amended complaint, and to have her case tried as an action at law. The former opinion will be modified,

with leave to the plaintiff to apply to the Circuit Court so to amend her pleadings.

The petition for rehearing is denied.

FORMER OPINION MODIFIED AND REHEARING DENIED.

McBRIDE, C. J., and BENNETT, J., concur.

BEAN, J., dissents.