[Filed November 30, 1885.]

# I. R. DAWSON *v.* JAMES COFFEY ET AL.

ASSIGNMENT FOR BENEFIT OF CREDITORS — WHEN SET ASIDE — EQUITY. — A general assignment for the benefit of creditors, when made in fraud of the insolvent law, may be set aside in equity; but in such case the creditor must first obtain a judgment upon his claim, or in some manner secure a lien upon the debtor's property.

ID. — ATTACHMENT — GARNISHMENT. — When a debtor attempts to dispose of his property to defraud his creditors, the latter may attach it by taking it from the debtor, or by garnishment if in the hands of a third party, and this even in case of a general assignment for the benefit of creditors if it be fraudulent.

ID. — EQUITY — CREDITOR'S BILL — WHEN MAY BE BROUGHT. — In such case the creditor may recover a judgment at law, and after exhausting the ordinary legal remedies to enforce payment, may commence a creditor's bill to obtain satisfaction of his claim.

ID. — AUXILIARY JURISDICTION. — Equity will lend its aid to prevent an attempted fraud on creditors by means of an insolvent law, but not, ordinarily, until the legal remedies are exhausted. The jurisdiction is only auxiliary, except in certain cases where a fund has been set apart in some manner to the payment of a particular class of debts.

ASSIGNMENT — CLAIM OF CREDITOR — EQUITY JURISDICTION. — Where an insolvent has made an assignment for the benefit of all his creditors under the

insolvent law of this State, and the claim of a creditor has been presented to the assignee, and allowed under the provision of the act, these facts would entitle the creditor to resort to equity to prevent a fraudulent diversion and misapplication of the fund.

ID.—SIMPLE CONTRACT CREDITORS—(Per WALDO, C. J.).—Simple contract creditors alleging a simple indebtedness to them cannot maintain a suit to set aside a conveyance on the ground of fraud. They must first establish their claim at law, and exhaust the remedies afforded by a court of law for its collection. This is a condition precedent to the jurisdiction of equity.

MARION COUNTY.   Plaintiff appeals.   Affirmed.

'The facts are stated in the opinion.`

*W. H. Holmes,* and *S. T. Richardson,* for Appellant.

We maintain that this suit is of equitable cognizance in the first instance, as it disposes of multifarious rights in one proceeding, thus preventing a multiplicity of actions. (Story Eq. Plead. § 285; Pom. Eq. Juris. §§ 245, 407; *Palen* v. *Bushnell,* 46 Barb. 25; *Tabb* v. *Williams,* 4 Jones Eq. 352; *Turner* v. *Adams,* 46 Mo. 95; *Richmond* v. *Dubuque & Sioux City R. R. Co.* 33 Iowa, 422, 487, 488; Pom. Eq. Juris. § 261, n. 1; *Boyd* v. *Hoyt,* 5 Paige, 65, 78; Pom. Rem. & Rem. Rights, § 470; *Worthy* v. *Johnson,* 8 Ga. 238.)   The relief prayed for is a *pro rata* division of the assets of James Coffey between all of his creditors, as their rights may appear; it is a case where one party is suing for the benefit of all.   (Wait Fraudulent Conveyances, § 69, n. 1; Paige, 104; 2 Barbour's Ch. Pr. p. 148; 12 Barb. 58.)   The rule requiring a creditor to exhaust his remedy at law before bringing a creditor's bill does not exist in this State.   (*Hodges* v. *Silver Hill Mining Co.* 9 Oreg. 200.) The conveyances by Coffey to Gilbert Bros. and to his wife were evidently made in contemplation of insolvency, and when he and they knew he was insolvent.   This was a fraud not only upon his other creditors, but upon the assignment law of this State.   (Pom. Eq. Juris. § 967, n. 1; Burrill Assign. § 6; *U. S.* v. *Bank of U. S.* 8 Rob. (La.) 262; *Burrows* v. *Lehndorff,* 8 Iowa, 96; *Van Vleet* v. *Slauson,* 45 Barb. 317; *Kohn* v. *Salmon,* 3 West C. Rep. 383.)

*Wm. M. Ramsey,* for Respondent Coffey.

A suit of this character can be sustained only in aid of a judgment, and before a creditor can maintain such a suit he must previously have established his claim by a judgment at law. (Bump Fraud. Con. 521, 522; Bispham Principles of Equity, § 527; Wait Creditor's Bills, §§ 73, 140; 3 Pom. Eq. Juris. § 1411, and n.; *Smith* v. *R. R.* 99 U. S. 401; *Jones* v. *Green* 1 Wall. 331, 332.)

*Tilmon Ford,* for Respondents Gilbert Bros. and Minto.

The complaint admits that James Coffey, at the time he executed his chattel mortgage to the Gilbert Bros. on December 9, 1884, was justly indebted to them in the sum of $650.50. This was two days before the assignment was made by Coffey to Downing, on December 11, 1884, and Coffey had the right to prefer the Gilbert Bros. to his other creditors if he chose to do so. (Bispham Principles of Equity, p. 339, § 244; Burrill Assign. p. 210, § 167; *Lord* v. *Fisher,* 19 Ind. 7.)

THAYER, J. — This case comes here upon appeal from a decree entered upon a decision sustaining a demurrer to a complaint.

It is alleged in the complaint that the respondent James Coffey had a stock of furniture and tobacco and cigars, and for a long time had been engaged in a general merchandise business, vending said articles; that he became indebted to divers parties, on account of said business, amounting to $4,000, and was owing other liabilities amounting to $700; that he was indebted to the respondents A. T. and F. N. Gilbert, partners, under the firm name of Gilbert Bros., in the sum of $615.50, and that he owed, or pretended to owe, the respondent Johanna Coffey, who is the wife of said James Coffey, $700; that he was insolvent, and contemplated insolvency, and while in that condition, and on the 11th day of December, 1884, he made a general assignment to the respondent Downing of all his property for the benefit of his creditors; that on the 9th day of December,

1884, said James Coffey, being then insolvent and intending to make the said assignment, entered into an agreement with the said Gilbert Bros., whereby, and as a part of the same transaction with the said assignment, and for the purpose of preferring the said Gilbert Bros. in the payment of their said demand over other of his creditors, executed to the said Gilbert Bros. a chattel mortgage upon a large portion of his said property, consisting of the said furniture; that on the 10th day of December, 1884, said James Coffey, while in the condition mentioned, and intending to make the said assignment, entered into an agreement with his wife, the said Johanna Coffey, whereby, and as a part of the same transaction with said assignment, and with a similar design of preference of payment of her demand, executed to her a bill of sale of the said stock of tobacco and cigars, and put her in nominal possession thereof; that soon after the execution of said chattel mortgage to said Gilbert Bros., the respondent John Minto, acting for them, wrongfully took possession of the property included in the said chattel mortgage and converted it to their own use; that it was worth $2,500; that at the time said James Coffey executed said chattel mortgage and bill of sale he was indebted in a large amount to divers persons on account of said business, as before mentioned; that said creditors last referred to assigned their claims to said appellant; that he has no property out of which to recover said claims, except the property included in said chattel mortgage and bill of sale, and that if the owner of said claims is compelled to take his distributive portion of said property in the hands of said assignee, and not allowed any portion of the property mortgaged and sold, as mentioned, he will not realize more than from five to ten per cent; that said assignee is acting in good faith so far as his said trust is concerned, but is powerless to question the validity of the said instruments; that the assignment to him was not made in good faith. Said complaint contained a prayer for an accounting for said property mortgaged and pretended to be sold, and that it be transferred into the hands of an officer of the court; that the said assignment be set aside, and the assignee account for the property in his hands and pay it over to such

officer, to the end that all the property of the said James Coffey, including that mortgaged and pretended to be sold to his wife, be distributed among the creditors of the said Coffey in accordance with equity, etc.

The demurrer to the complaint was upon two grounds, first, because they were two causes of suit improperly united; and second, because the said complaint did not state facts sufficient to constitute a cause of suit. The second ground is the more important one. It raises the question as to whether creditors at large, having mere legal claims against a debtor on account of ordinary contract debts, have a right to go into a court of equity to enforce them where the debtor has attempted to dispose of his property in order to defraud them.

That a general assignment for the benefit of creditors may be set aside when made in violation of the insolvent law there can be no question; but whether it can be done by an ordinary creditor of the insolvent before he has obtained a judgment upon his claim, or in some manner secured a lien upon the debtor's property, is more serious. I am strongly of the impression that he cannot. Where a debtor attempts to dispose of his property in any way, in order to defraud his creditors, they may proceed and attach by taking it from the debtor, or by garnishment, if in the hands of another party. They may pursue this remedy in case of a general assignment for the benefit of creditors, if it be fraudulent. (*Moss* v. *Humphrey*, 4 Greene, G. 443; *Burrows* v. *Lehndorff*, 8 Iowa, 96; *Ruble* v. *McDonald*, 18 Iowa, 493.) I cite these authorities with more confidence from the fact that our insolvent law was, to a great extent, taken from the Iowa law upon that subject. The creditors may also in such a case proceed and recover judgment at law, and after exhausting the ordinary legal remedy to enforce payment, commence a suit in equity in the nature of a creditor's bill to obtain satisfaction of their claims.

An attempt to defraud creditors through the means of the insolvent law is as mischievous as an attempt to effect it in any other way, and a court of equity would lend its aid to prevent it in that case as readily no doubt as in any other, but

it would not exercise principal jurisdiction, would only furnish the creditor auxiliary assistance to obtain his right. It would never attempt to enforce the payment of contract debts except under particular circumstances. It must be a case where a fund has been set apart, or in some manner devoted to the payment of a class of debts, before equity will interfere, until the legal remedy is exhausted, such as, in a case of prize money made by a privateer and required by articles to be distributed (13 Ves. 397); the assets of a limited partnership, where the statute constituted them a special fund for the benefit of all the creditors of the partnership. (*Inness* v. *Lansing,* 7 Paige, 584, and the like cases.)

I think that in this case, if the appellant had proved his claim under the provisions of the insolvent act, he could then have resorted to equity to have had the fund applied to the payment of the debt, and to prevent a fraudulent diversion or misapplication of it. The assignment vests in the assignee the title to all property belonging to the debtor at the time of making the assignment. The statute as printed does not read so, but it is on account of typographical error. (See enrolled act.) After a creditor has presented his claim under oath as provided by the act, I think he would have such an interest in the assets of the insolvent as would enable him to enforce the remedy above suggested. He certainly ought to, after its allowance. But to have the assignment set aside and the court undertake to administer upon the estate as prayed in the said complaint would, to my mind, be an unprecedented proceeding. The creditor's claim must be adjudicated upon, or presented and allowed in the insolvent proceedings, before the aid of equity could be invoked.

I am of the opinion, therefore, that the decision sustaining the demurrer should be affirmed.

WALDO, C. J., concurring.—This is a suit brought in the interest of certain alleged creditors of James Coffey, to set aside certain conveyances of personal property made by Coffey to defraud, as alleged, the said creditors. There is a fatal objection

to the suit in its inception. The claims of the complaining creditors have not been reduced to judgments, and executions returned unsatisfied.

They are all simply contract creditors, alleging a simple indebtedness to them on the part of the alleged debtor. Such suits cannot be maintained. The ground of equitable jurisdiction in such cases is fraud in the disposal of the debtor's property, and which, unless equitable remedies are applied, will defeat the collection of the debt. But before the fraud can be set up, the legal facts which are conditions precedent must be established. That they must be established at law is implied in the nature of the facts themselves. It is exclusively the province of a court of law to say that there is a legal debt, and that it cannot be made at law. Therefore a creditor's bill "must be preceded by a judgment at law, establishing the measure and validity of the demand of the complainant for which he seeks satisfaction in chancery." (*Smith* v. *R. R. Co.* 99 U. S. 401. And see *Baxter* v. *Moses,* 77 Me. 465.) So in *Parish* v. *Lewis,* Freem. Ch. Miss. 306, the court say: "But if you wish to reach equitable assets, or other things not subject to execution at law, you must show that you have exhausted your remedies at law by a return of an execution unsatisfied, as the *foundation* of your right to come into this court. In such case, the complainant's *right* to relief in this court depends upon his having run his execution at law without being able to satisfy his judgment. It is not a mere technical objection, but goes to the very foundation of the suit, and is not waived even by a general answer. The complainant must show an execution returned unsatisfied, and no state of facts will excuse such a return." (*Brinkerhoff* v. *Brown,* 4 Johns. Ch. 671, 687; *McElwain* v. *Willis,* 9 Wend. 548; *Scriver* v. *Bostwick,* 2 McCord Ch. 416; *Hadden* v. *Spader,* 20 Johns. 554; *Moore* v. *Young,* 1 Dana, 516.)

*Hodges* v. *Silver Hill Mining Co.* 9 Oreg. 200, was not a suit to reach equitable assets of the debtor. There the stockholders were primarily liable in equity. Their liability may be likened to that of a guarantor after insolvency of the principal debtor,

Points decided.

in which insolvency may be proved like any other fact in the cause of suit. (Pars. Notes and Bills, 142, and cases cited.)

The judgment must be affirmed.