[Filed March 7, 1887.]

## I. R. DAWSON v. L. J. SIMS ET AL.

CREDITOR'S SUIT—ATTACHMENT.—The lien created by an attachment duly levied upon the property of the debtor is a sufficient foundation for the jurisdiction of a court of equity to aid, by means of a creditor's suit, in removing fraudulent impediments or conveyances which prevent the creditor from laying hold of the property and applying it to the payment of his debt.

UNION COUNTY. Plaintiff appeals. Reversed, and remanded for further proceedings.

*L. B. Cox*, for Appellant.

*C. H. Finn*, for Respondent.

LORD, C. J.—This is a suit in equity to set aside a general assignment for the benefit of creditors, and certain other instruments executed to the defendant Sims, to the end that the property thereby conveyed and mortgaged may be made subject to a claim or indebtedness held by the plaintiff against L. J. and G. R. Sims, upon which an action by attachment has been commenced. A demurrer was sustained to plaintiff's complaint, and upon refusal to plead further, judgment was rendered against him, and he has appealed to this court.

The only question raised by the demurrer is a want of juris-

diction in the court to act without an allegation that judgment has been obtained, and that execution issued therefrom has been returned unsatisfied. It is insisted that such an exhibition of facts is a condition precedent, and which must be disclosed by averment in the complaint, before the jurisdiction of equity will attach.

In *Dawson* v. *Coffey*, 12 Or. 519, Waldo, C. J., said : " It is exclusively in the province of a court of law to say there is a legal debt, and that it cannot be made at law. Therefore, a creditor's bill ' must be preceded by a judgment at law, establishing the measure and validity of the demand of the complaint for which he seeks satisfaction in chancery.' " (*Smith* v. *Railway Co.*, 99 U. S. 401.) " It is not a mere technical objection, but goes to the very foundation of the suit, and is not waived even by a general answer. The complaint must show an execution returned unsatisfied, and no state of facts will excuse such a return." (Freem., Ch. 306.)

Upon the strength of this decision it is claimed that a judgment at law, and the return of execution *nulla bona*, is a prerequisite to the maintenance of such a suit, and that no state of facts short of such an averment can obviate the defect of their omission in the complaint. Hence, the lien created by an attachment would be insufficient to authorize the jurisdiction of equity. But the language of the opinion must be read in the light of the facts to which it was applied. The case before the court was that of simple contract creditors alleging an indebtedness, seeking to maintain a suit to set aside conveyances on the ground of fraud, for the purpose of collecting their debts. Upon this state of facts the rule of law as stated is beyond dispute. No principle is better settled in equity, than that its courts are not tribunals for the collection of debts, and that before its jurisdiction can be invoked to aid creditors in obtaining payment, all legal remedies must have been exhausted, or proved inadequate. (Bump, Fraudulent Conveyances, 514–521 ; 3 Pom. Eq. Juris., Sec. 1415 ; Wait, Creditor's Bill Sec. 73 ; Bispham's Principles of Eq., Sec. 527.) But the question whether the lien created by the attachment is sufficient

in a proper case to justify equitable interference in behalf of creditor's suits was not decided, unless the law in any case of this kind has made a judgment a *sine qua non* to the exercise of equitable intervention. The answer to this question has not been altogether satisfactory; but has resulted in a conflict of authority. In a note to section 1415 of Pomeroy's Eq. Juris., the decisions pro and con have been collected; and in *Hahn* v. *Salmon*, 20 Fed. R. 804, Mr. Justice Deady, after a careful consideration, reached the conclusion that for the protection of such a lien the plaintiff in a creditor's bill was entitled to the aid of a court of equity. (See, also, Wade on Attachment, Sec. 33, and notes.)

On the other hand, Mr. Wait regards the interference of equity to protect liens created by attachment as a violation of the rules of chancery practice, established upon the definite principle that before a creditor can maintain such a suit he must previously have established his claim by judgment in a court of law. He says: " We deny that a mere attaching creditor can, under any correct theory of law, become an actor in a creditor's suit. Indeed, the underlying principles of the cases in which it is sought to make a lien acquired by the provisional remedy of attachment the practical equivalent of a lien procured by final judgment, are subversive of the time honored policy and rule of the courts, that a creditor's bill must be founded on a definite claim, established by a judgment at law. If the innovations of modern procedure call for the abrogation of this old chancery practice, it should not be superseded by indirection, but rather by some careful formulated legislative substitute. The requirement is neither artificial nor technical; it is a necessary protection and safeguard to the debtor." (Wait's Fraudulent Con. and Creditor's Bill, Sec. 81.)

Except to satisfy a claim out of some fund accessible only in equity (*Hodges* v. *Silver Mining Company*, 9 Or. 202), the impression has heretofore remained with me that the claim must be first established at law before the equitable jurisdiction can be invoked. It is admitted that the object of a creditor's bill is not to ascertain or determine the amount and valid-

ity of a claim or debt, or to undertake the enforcement of its payment or collection; as it is the exclusive province of a court of law to establish that there is a legal debt, and that it cannot be made at law, but that when it is thus established by judgment, and legal remedies are inadequate to enforce its collection against the property of the debtor on account of fraudulent impediments or conveyances, equity will lend its aid, by means of a creditor's suit, to remove them. In such case its existence is purely auxiliary, and designed only to remove the fraudulent obstructions which prevent the execution from laying hold of the property, and applying it to the payment of the judgment. " The creditor must obtain a judgment," says Mr. Bump, " issue an execution and procure a return *nulla bona*, before he can file a bill in equity to obtain satisfaction out of the property of the debtor which cannot be reached at law." This seems to indicate that before the equity jurisdiction can attach, there must be a judgment which the law cannot enforce against the property of the debtor; in other words, that the remedy in equity is given in such case because the legal remedies are inadequate. Can this be known before a judgment has been obtained and execution returned *nulla bona ?*

By analogy, it is said, the suit ought to be maintained to protect the lien acquired by the attachment. This assumes there is no intrinsic difference in principle between the lien acquired by attachment and by judgment, although the circumstances out of which they arise are essentially different. In the one case it is an unadjusted legal demand—sworn to, it is true, but requiring the security of a bond before a seizure or levy can be made on the debtor's property. With his claim thus reinforced, the creditor in attachment may be well " deemed " a purchaser in good faith and for a valuable consideration as against third persons. The attachment is merely a provisional remedy, and ancillary to the action, and always subject to the liability of being annulled or discharged. In the other case, the claim or demand has been adjusted or merged into a judgment, which is sometimes said to be the end of the law ; " and in this state becomes a lien against real property when

docketed, or upon which an execution may issue at the instance
of the creditor, and a lien be acquired by the seizure of proper-
ty without any further requirement. The execution comes of
right—as a necessary consequence—to execute the judgment
and make it bear fruit, and it is only when fraudulent obstruc-
tions render it unavailing that a party becomes entitled to resort
to equitable remedies. Not so with an attachment; to justify
a levy upon property under it there must be a security given,
with the consequent liability for its issuance, if it prove wrong-
ful or without just cause. The attachment depends on the
action, but the action nor the judgment depend in any manner
upon the attachment. But does this difference affect the equit-
able right to be protected in the lien acquired by attachment
against fraudulent obstructions? By the law, the object of the
attachment is to enable a party to acquire a lien for the secur-
ity of his demand by a levy made before instead of after the
entry of a judgment. As the lien acquired in either case de-
rives its force and effect from the law, is not one lien practical-
ly the equivalent of the other, and entitled to like protection
against fraudulent impediments? Or do they differ in degree,
as a judgment differs from an unadjusted demand? It is cer-
tainly difficult to answer all the questions which may arise pro
and con, and it is not surprising that there is a diversity of
judicial utterance upon this subject. It is not to be disputed,
however, that great injustice and hardship do often occur un-
der the operation of the rule that forbids equity to interfere
until a judgment is first obtained. Nor is it any answer to say
that this is one of the hazards which every one must incur who
does business on credit, and necessarily assumed in such an
undertaking. If the risk can be diminished without injustice
to honest, struggling debtors, it ought to be done. The rule
ought to be relaxed, if it will be promotive of justice. The
matter of practice is not of as much consequence as the proper
administration of justice. The difficulty in all such cases is
about the same, and lies in the fact that the debtor is about
to dispose of his property before a judgment at law can be
obtained. It was so in *Hahn* v. *Salmon, supra,* and taking

the facts as true, it is so here.    To such there can be no injus-
tice, upon attachment proceedings commenced, to tie up their
property by injunction until the fraudulent impediments can
be removed.

In view of these circumstances, if the ends of justice require
it, there should be no hesitation in making the departure—if
departure it can be considered—by granting the aid of equity
in such cases.    The courts of other states have done it, and
done it on the principle that the attaching creditor, having a
lien by authority of the statute, was entitled to the aid of a
court of equity as much in that case as any other to enforce his
legal right.    (See note to Pom. Eq. Juris., *supra*.)    In *Hahn*
v. *Salmon*, *supra*, the subject was very ably considered and the
relief granted.    There is no decision of our court to which the
doctrine of *stare decisis* can apply adverse to the granting of
such relief, if considerations of right and justice require it.

It is our judgment that it was error to sustain the demurrer,
and that it ought to have been overruled.    As the purpose of
the demurrer in admitting the facts was to take the opinion of
the court as to the law upon this point, it is not necessary to
consider the other facts upon which the complaint was ground-
ed.    That they are sufficient, if proved, to make out a case of
fraudulent disposition of property with the intent to hinder
and delay creditors, and to defeat the purpose of the assign-
ment act to secure a rateable distribution of the property of the
debtor among his creditors, can hardly be questioned.    They
are alleged, in effect, to be without consideration and in pursu-
ance of a scheme of fraud, and taken together to constitute one
transaction designed to put their property beyond the reach of
crditors, and to create unlawful preferences.    Judging from the
argument that the case must be tried on its merits, the decree
is reversed, and the cause remanded for such further proceed-
ings as may be just and equitable.