[Decided at PENDLETON July 31, 1897.]

## MATLOCK v. BABB.

(49 Pac. 873.)

1. CREDITORS' BILL — GARNISHEE PROCESS.— The general equitable remedy by creditors' bill is not taken away or superseded by the statutory proceeding of garnishment: *Sabin* v. *Anderson*, 31 Or. 487, followed.

2. CREDITORS' BILL — SUPPLEMENTARY PROCEEDINGS.— A judgment creditor's remedy by a suit in equity in the nature of a creditors' bill to uncover assets fraudulently concealed is not superseded by the statutory provision for proceedings supplementary to execution conferred by Hill's Ann. Laws, §§ 308–312. This latter seems to be particularly designed to reach property which still remains under the control of the debtor.

3. ADEQUATE REMEDY — EQUITY JURISDICTION.— Where several defendants separately claim an interest in or a portion of property sought to be reached by the plaintiff an equitable proceeding by creditors' bill is the only adequate remedy, since in no other single suit can all disputes

touching the title be settled, and hence supplementary and garnish-
ment proceedings have not taken the place of the long established
chancery suit.

4. CREDITORS' BILL — LIEN OF GARNISHMENT.— A judgment creditor by the
issue of an execution and a levy thereunder acquires a sufficient lien
upon property alleged to have been fraudulently conveyed for the
purpose of defeating payment of his claim, to base a creditors' suit
upon, although he has not exhausted his remedy at law or had the
execution returned nulla bona: *Dawson* v. *Sims*, 14 Or. 561, and *Hahn*
v. *Salmon*, 20 Fed. 806, followed.

From Umatilla: STEPHEN A. LOWELL, Judge.

On or about the seventeenth day of April, 1896,
the plaintiff W. F. Matlock recovered a judgment in
the Circuit Court of the State of Oregon for Umatilla
County against the defendant W. H. Babb upon an in-
debtedness that had accrued prior to January 1, 1892,
for the sum of $1,870.53 and $25 costs and disburse-
ments, and on December 19, 1896, recovered a second
judgment in the same court against him for the sum
of $2,304 and $26.40 costs and disbursements. Writs
of execution were duly issued thereon, and under the
one issued upon the first judgment the sheriff levied
upon sixty-eight head of cattle by taking them into
his possession, and upon some thirty-two head addi-
tional by the process of garnishment served upon the
defendants R. S. Perkins, G. W. Hunt, and G. W.
Ingalls, in whose possession they were at the time
of the levy, all as the property of Babb. The sheriff,
by virtue of the other writ, subsequently levied upon
the same property in like manner. Concerning these
cattle the plaintiff alleges, in substance, that about
January 1, 1892, W. H. Babb was, ever since has been,
and now is the owner thereof; that about December,
1893, he leased them to one Peter Schwab, but that in

reducing the agreement to writing he used the name
of his wife, Hannah N. Babb, one of the defendants
herein, as lessor, and caused the same to be signed
by her as such; that Babb caused said lease to be so
executed for the purpose of deceiving his creditors,
and particularly the plaintiff, and to hinder and delay
the collection of their just demands; that thereafter
the said Hannah N. Babb, for the purpose of hinder-
ing, delaying, and defrauding said creditors, and for
the further purpose of cheating and defrauding the
said W. H. Babb, made a pretended transfer of the
cattle to said Perkins, and that he accepted the said
transfer with like intent and purpose; that said pre-
tended transfer was without any good or valuable con-
sideration, and was accepted by Perkins with full
knowledge that said property belonged to Babb. It is
further alleged that the defendants Hunt and Ingalls
claim some interest, right, or title in and to said cattle,
but that such right or interest, whatever it might be, is
inferior and subordinate to the rights of plaintiff; that
all the defendants are insolvent, and that Babb has
no property other than the cattle out of which to
make the amount of the executions; and that Perkins,
Hunt, and Ingalls threaten to sell and dispose of the
cattle now in their possession, and appropriate the
proceeds to their own use, to the irreparable injury of
plaintiff. A demurrer was interposed to the complaint
in behalf of Perkins, Hunt, and Ingalls, and Hannah
N. Babb, which being overruled by the court, and a
decree given and entered in favor of plaintiff, these
defendants appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Messrs. A. D. Stillman* and *John C. Leasure.*

For respondent there was a brief and an oral argument by *Messrs. John J. Balleray* and *James H. Raley.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

1.   The appellants insist that the complaint is insufficient for two reasons: *First,* that it shows plaintiff has an adequate remedy at law under the process of garnishment; and, *second,* that the facts stated do not entitle plaintiff to maintain a creditors' suit in aid of, an execution at law, and, incidentally, that it fails to show the plaintiff had exhausted his remedy at law, or that he had procured a return nulla bona upon his executions.   In support of the affirmative of the first question it is argued that the remedy by creditors' bill in equity is superseded by the garnishee process and by the proceedings supplementary to execution. In so far as it pertains to such process under a writ of attachment, we have just decided, in *Sabin* v. *Anderson,* 31 Or. 487 (49 Pac. 870), that the equitable jurisdiction ordinarily asserted by means of the creditors' bill is not superseded thereby, and that, where garnishee proceedings have not been invoked to the extent of obtaining a trial upon the merits, a creditors' bill will lie to uncover property transferred for the purpose of defrauding creditors and for an accounting.   It is therefore unnecessary to discuss the question further here.

2.   But this case involves the further question as

to whether the proceedings supplementary to execution have superseded the equitable jurisdiction, and to this the same answer must be given. The statute provides, in effect, that after the issuance of an execution, and upon proof to the satisfaction of the court or judge thereof that the judgment debtor has property liable to execution which he refuses to apply towards the satisfaction of the judgment, he may be required to appear and answer under oath concerning his property; and, if it appear that he has any property subject to execution, the court or judge may make an order directing him to apply the same in satisfaction of the judgment, or the property may be levied upon and sold as provided by law. The court or judge may also make an order restraining the debtor from in any manner disposing of his property in the meantime, and for disobedience thereof he may be punished for contempt: Hill's Ann. Laws, §§ 308–310. Section 311 provides another means for procuring the attendance of the judgment debtor for examination, and section 312 gives the remedy by garnishment, and this is all there is of the proceeding supplementary to execution. Aside from the provision for the garnishee process, none of these sections provide a way to reach third persons who may be holding the debtor's property, and in league with him, to deprive the creditor of the benefit of his execution; and, indeed, they seem to have been intended to uncover assets or property which are within the possession or under the control of the debtor only, and in this respect the provisions therein for supplementary proceedings can in no sense take the place of

a creditors' bill. The case of *Feldenheimer* v. *Tressel*, 6 Dak. 265 (43 N. W. 94), is much in point. SPENCER, J., speaking for the court, says: "We cannot assume that the legislature intended to take from creditors any of the remedies that they enjoyed under the court of chancery for the enforcement of their judgment after having exhausted their remedy at law, and turn them over to the often inadequate and imperfect remedy provided by the statute in regard to proceedings supplementary to execution. Upon reason and authority the remedy by creditors' suit exists now as it formerly did under the Code of Chancery." In support of this view, see *Bennett* v. *McGuire*, 58 Barb. 625; *Burt* v. *Hoettinger*, 28 Ind. 217, and *Monroe* v. *Reid*, 46 Neb. 316 (64 N. W. 983).

3. There is an additional reason beyond those assigned in *Sabin* v. *Anderson*, 31 Or. 487, why the garnishee proceeding is not as effectual, when applied to the case at bar, as the creditors' bill. It is disclosed by the complaint that Perkins, Hunt, and Ingalls are all claiming a portion of this property, or an interest therein, not jointly, but severally, so that one proceeding would probably not settle all dispute touching the title, whereas by the creditors' bill this end may be accomplished. See, in this connection, *Pierstoff* v. *Jorges*, 86 Wis. 128 (39 Am. St. Rep. 881, 56 N. W. 735), and *Gullickson* v. *Madsen*, 87 Wis. 19 (57 N. W. 965).

4. In support of the contention that the facts stated do not entitle the plaintiff to maintain a creditors' suit in aid of the executions, it is urged that as a foundation of such a suit there must exist an actual lien upon the property which is the subject

of the contest, and that an attachment which is acquired by the garnishment of third persons having the possession thereof does not fill the requirements necessary to constitute such a lien. That the suit will lie to set aside an incumbrance or a transfer of property made to defraud creditors in aid of an execution at law, there can be no controversy: 2 Beach on Modern Equity Jurisprudence, § 924. If, after securing his lien by the issuance of an execution and a levy thereunder, the creditor is compelled to come into a court of equity for the purpose of removing the obstruction fraudulently interposed to prevent the ample execution of the writ, he may do so immediately after he has obtained his lien by such levy, and, the obstruction being removed, he may proceed to sell the property under the execution, and subject the proceeds thereof to the payment of his judgment. Neither is he required, in such a case, to exhaust his remedy at law, or to have an execution returned nulla bona, before he can resort to equity. The lien itself gives the equitable right to have the fraudulent transfers and incumbrances swept away, that the execution may operate effectively to transfer the better title, and produce the larger returns for the judgment creditor: *Vanderpool* v. *Notley*, 71 Mich. 422 (39 N. W. 574). The rule is distinctly stated in *Tappan* v. *Evans*, 11 N. H. 327, as follows: "Where property is subject to execution, and a creditor seeks to have a fraudulent conveyance or obstruction to a levy or sale removed, he may file a bill as soon as he has obtained a specific lien upon the property, whether the lien be obtained by attachment, judgment, or the issuing of an execution.

But, if the property is not subject to levy or sale, or if the creditor has obtained no lien, he must show his remedy at law exhausted by an actual return upon his execution that no goods or estate can be found (which is pursuing his remedy at law to every available extent), before he can file a bill to reach the equitable property of the debtor." This rule was approved by Judge DEADY in *Hahn* v. *Salmon,* 20 Fed. 806. And it has been held by this court that an attachment lien before judgment is a sufficient foundation upon which to invoke the equitable jurisdiction to remove fraudulent impediments which may stand in the way of laying hold of the property, and applying it to the payment of the demands of attaching creditors: *Dawson* v. *Sims,* 14 Or. 561 (13 Pac. 506). Now, the property of a debtor in the hands of a third party is levied upon by execution in like manner as the same may be attached (subdivision 4, § 283, Hill's Ann. Laws), and where property is levied upon or attached in the hands of a third person, and he has given a certificate as required, the officer may, in the further execution of the writ, take the property wherever he can find it, and sell and apply it in satisfaction of such writ: Hill's Ann. Laws, §§ 284, 285. Such a levy, it would seem, places the property in custodia legis. Mr. Wade, in his work on Attachments (section 331), says: "Supposing the property in the hands of the garnishee to be attachable, and the property attached by the proceeding taken for that purpose, he thereafter holds it subject to the judgment. Thenceforward the property is in the custody of the law, and the garnishee becomes its legal custodian." To the

same effect, see, also, Drake on Attachments, § 453; *Renneker* v. *Davis*, 10 Rich. (S. C.) Eq. 289. The very purpose of the levy by garnishment, as well as by actual seizure, is to create a lien, and thereby charge the property with the payment of the debt.   The priority of levy gives a superior right, as it respects other attaching creditors and all subsequent purchasers and incumbrancers, and upon principle there is no sufficient reason why such a lien should not support a creditors' bill in aid of an execution at law.   The case of *Sabin* v. *Michell*, 27 Or. 66 (39 Pac. 635), was supported and the suit maintained upon a like lien, although the question raised here was not directly decided.   We think the lien is sufficient to support the equitable remedy sought to be invoked.   It follows that there was no error in overruling the demurrer, and the decree of the court below will therefore be affirmed.

AFFIRMED.