Argued December 1, decided December 9, rehearing denied December 30, 1913.

## RYCKMAN *v.* MANERUD.

(136 Pac. 826.)

**Creditors' Suit—Conditions Precedent—Exhaustion of Legal Remedies.**

1. A creditor who has obtained a judgment against an individual partner but has no judgment against either the firm or the other partner and has not attached property either of the firm or of the second partner cannot maintain a suit in the nature of a creditor's bill against either the firm or the second partner.

[As to demands which will support creditors' suits, see note in 66 Am. St. Rep. 271. As to creditors' suits in aid of execution, see note in 90 Am. Dec. 288.]

**Judgment—Merger and Bar—Parties to Judgment—Partners.**

2. Where a creditor obtains judgment against an individual knowing when the suit is brought that another has an interest as partner in the subject matter, though he did not know this when the contract

involved was made, such judgment is a bar to a subsequent suit against the other partner of the firm.

**Partnership—Liabilities—Joint or Several.**

3. Debts of partnerships are joint and not several obligations.

**Judgment—Merger and Bar—General Rule.**

4. The original demand on which a judgment is based is merged in the judgment.

**Parties—Defects—Objections and Waiver.**

5. Where a debt is joint, the creditor must sue all the debtors or those sued may demur for defect of parties or plead in abatement, or they may waive the defect and permit judgment to be taken against them.

**Stipulations—Construction and Operation.**

6. A stipulation between plaintiff, defendant, and a third person that defendant and the third person may on or before the last day of the term of court pay to plaintiff $1,000 and deliver to plaintiff their note for $3,500 secured to the satisfaction of plaintiff, or if they fail to do so plaintiff may take judgment against defendant for $4,500 without trial, does not in any way give plaintiff the right to proceed against the third person as a partner of defendant nor against the firm after judgment has been taken in accordance with the stipulation against defendant alone.

**Partnership—Liabilities—Application of Assets.**

7. A judgment creditor of a partner is not entitled to any part of the proceeds of a judgment in favor of the firm unless there is enough to pay all of the debts of the firm in full and leave a balance to be divided between the partners, but, if there are enough assets of the firm to pay its debts and leave a balance, the creditor would be entitled to his debtor's share of such balance.

From Lane: JAMES W. HAMILTON, Judge.

Department 1.  Statement by MR. JUSTICE RAMSEY.

This is a suit in equity in the nature of a creditor's bill, wherein Carl B. Ryckman is plaintiff and Sam Manerud and Edward Quinn, copartners as Manerud & Quinn, John C. Jenkins, First National Bank of Eugene, Oregon, Sam Manerud and Edward Quinn, and the City of Eugene, a municipal corporation, are defendants, to subject to the payment of a debt due the plaintiff the assets of the defendants Quinn and Manerud as partners and as individuals, etc.  The court below entered

a decree in favor of the plaintiff and certain of the defendants and against Manerud and Quinn.

                    REVERSED: REHEARING DENIED.

For appellants Manerud & Quinn and John C. Jenkins there was a brief and an oral argument by *Mr. John C. Jenkins.*

For appellant First National Bank of Eugene, Oregon, there was a brief and oral arguments by *Messrs. Woodcock & Smith.*

For respondent Carl B. Ryckman there was a brief over the names of *Messrs. Foster & Hamilton* and *Mr. H. E. Slatterly,* with oral arguments by *Mr. Slatterly* and *Mr. O. H. Foster.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On February 18, 1909, Sam Manerud, one of the defendants, entered into a contract with the City of Eugene, by the terms of which said Manerud agreed to construct for said city a power canal. On or about April 23, 1909, the said Sam Manerud and the defendant Edward Quinn made and entered into a contract between themselves, whereby they formed a partnership and assumed as partners the contract referred to, *supra,* for the construction of said power canal for said city. On the 29th day of April, 1909, the defendant Manerud and the plaintiff entered into a written contract whereby Sam Manerud sublet to the plaintiff the construction of about one and three fourths of a mile of said power canal. This contract was entered into about six days after Manerud and Quinn had formed said partnership. Quinn was not a party to said contract, but he signed it as an attesting witness. The plaintiff performed most of his part of said con-

tract for the construction of said portion of said power canal, and the firm of Manerud & Quinn paid him therefor in checks, signed by said firm, sums aggregating more than $6,000. The plaintiff claims that when he entered into said contract with Sam Manerud for the construction of part of said canal, as stated, *supra,* he did not have any knowledge of the fact that Manerud & Quinn had formed said partnership. On November 11, 1909, the plaintiff alleges that there was owing to him from Manerud & Quinn, for work on said canal, a balance of $5,002.75 after crediting said payments on said work. The plaintiff avers that said sum was due to him from Sam Manerud and Edward Quinn as partners and as individuals. On October 19, 1910, the plaintiff commenced an action against the defendant Sam Manerud for the recovery from him, of said sum of $5,002.75 in the Circuit Court of Lane County. Edward Quinn was not made a party to said action, although the plaintiff knew at that time and long prior thereto that he was a partner of the plaintiff, and that the firm of Manerud & Quinn were constructing said canal, and that they had paid him more than $6,000 on his claim for work on said canal. That on November 11, 1910, while said action was pending, a stipulation was signed which is set out below, by authority of which a judgment was rendered in said action in favor of Carl B. Ryckman, the plaintiff, and agaist Sam Manerud for $4,500 on March 4, 1911. This judgment was not rendered against Quinn or Manerud & Quinn. The plaintiff on March 10, 1911, caused an execution to issue on said judgment against Manerud, but said execution was thereafter returned without anything having been made thereon.

On motion of the plaintiff, the Circuit Court.entered an order that Manerud appear before said Circuit Court of Lane County and be examined under oath

68 Or.—23

concerning his property, and on May 8, 1911, he appeared and was examined, and upon said examination said court found that Manerud had no property, excepting an interest in the judgment rendered in said Circuit Court on the 22d day of December, 1910, against the City of Eugene and in favor of said Sam Manerud and Edward Quinn, as partners, for the sum of $6,525.90 and costs. It seems that Sam Manerud was insolvent at all times after February 11, 1910.

The following is a copy of the stipulation executed on November 11, 1910, and filed in the above-named Circuit Court in the action of *Carl B. Ryckman* v. *Sam Manerud,* omitting the name of the court and the title of the cause:

"It is hereby stipulated and agreed by and between the above-named plaintiff, Carl B. Ryckman, and the above-named defendant, Sam Manerud, and Edward Quinn, that the said Sam Manerud and Edward Quinn may pay to said plaintiff, on or before the last day of the present November term of the above-entitled court, the sum of one thousand dollars ($1,000) cash and deliver to said plaintiff their promissory note for the sum of three thousand five hundred dollars due on or before six months from the date thereof, secured to the satisfaction of plaintiff, or said plaintiff may, on the last day of said term, take judgment against said defendant in said action for the said sum of four thousand five hundred dollars ($4,500); and the court shall be authorized to enter judgment accordingly without trial. In case said sum of one thousand dollars ($1,000) is paid and the said note and security given as above provided, said action shall be dismissed.

"Dated November 11, 1910."

Said stipulation was signed by Carl B. Ryckman, Sam Manerud, and Edward Quinn and assented to by Holmquist & Nelson, attorneys for the plaintiff, and

John C. Jenkins, attorney for the defendant Sam Manerud.

It will be noticed that the partnership of Manerud & Quinn is not referred to in said stipulation and that it does not bind Quinn to do anything, and it does not oblige Manerud to do anything excepting to permit judgment to be entered against him for $4,500. It makes no provision for paying the judgment, and the judgment was to be entered against Manerud only. The respondent places much stress on the foregoing stipulation and the judgment entered in accordance therewith.

On December 22, 1910, the firm of Manerud & Quinn recovered a judgment against the said City of Eugene for the sum of $6,525.90 as the balance due them for the construction of said power canal, and said judgment was affirmed by this court after this suit was begun. Said judgment is the only asset of said firm of Manerud & Quinn.

The plaintiff alleges in the complaint that, when the stipulation set out, *supra,* was executed, it was mutually agreed, for the benefit of said partnership and of the plaintiff, and by and between Sam Manerud and Edward Quinn, that the said Manerud should have sufficient of the said partnership assets to secure him on the payment of said sum of $4,500 to the plaintiff, Ryckman, and that a portion of the assets of the firm was assigned to him for that purpose; that he should have a lien upon said assets for said sum; that said sum was set aside for that purpose; and that Manerud should be allowed for that sum on a final accounting for said firm, etc. But there was a failure to prove said allegations, and the written stipulation set out, *supra,* contains all that the parties agreed upon at that time.

Sam Manerud and Edward Quinn refused to pay the plaintiff anything out of said judgment against the

City of Eugene and gave to the First National Bank of Eugene, and other persons, whom they owed, partial assignments of said judgment, and John C. Jenkins, defendant, claims a lien on said judgment for one third thereof and for $650 for attorney's fees under a contract with said firm. The judgment obtained by the firm of Manerud & Quinn against said City of Eugene, as stated herein, was in part based on work that the plaintiff had done on said canal under his said contract and for which he obtained said judgment of $4,500 against Sam Manerud. The plaintiff has not obtained any judgment against the firm of Manerud & Quinn or against Quinn; nor has he commenced any action at law against said firm or against said Quinn. The only judgment that he has obtained is an individual judgment against Manerud only.

The complaint prays *inter alia* that the assets of Edward Quinn and of the firm of Manerud & Quinn be marshaled and that the other creditors be required to exhaust the individual assets of Edward Quinn; that the judgment of the plaintiff be decreed to be a first lien on the partnership assets of Manerud & Quinn; that said sum of $4,500, alleged to have been assigned to Sam Manerud for the benefit of the plaintiff, be decreed to be the property of the plaintiff; that the plaintiff be subrogated to the rights of Manerud in the partnership estate, etc.

The defendants Manerud, Quinn and Jenkins answered the complaint, denying parts thereof, and setting up new matter, and, among other things, they pleaded that the plaintiff, with full knowledge that Manerud and Quinn were partners, and of the ownership by said firm of the contract for the construction of said canal, and of the subletting by Manerud, for the benefit of said firm, of the construction of said portion of said canal to the plaintiff, and of all the facts connected with such construction, commenced the

action referred to, *supra*, against Sam Manerud individually to recover the said sum of money due the plaintiff for his said work and by so doing elected to hold said Manerud individually upon said contract of subletting and to release said copartnership and the defendant Quinn from all liability on said contract of subletting, and that the plaintiff is now estopped to allege any liability upon said copartnership under said contract and is estopped by the judgment obtained in said action from now alleging any liability against said copartnership or said Quinn on account of any of said facts, etc. This plea of estoppel was denied by the reply, and it presents one of the principal questions for decision. The pleadings are prolix, and it is impracticable to set them out more fully. There are two principal questions for decision in this case.

1. The first question for determination is: Can the plaintiff maintain this suit in the nature of a creditor's bill against Edward Quinn, or the partnership of Manerud & Quinn, without having obtained a judgment against said Quinn or said firm, and without having attached the property of said Quinn or of said firm? The general rule is that a creditor must reduce his claim to a judgment before he will be permitted to maintain a creditor's bill to reach assets, and many cases hold that it is necessary also to have a writ of execution issued and returned *nulla bona* before instituting a suit in equity. Other cases, including cases decided by this court, hold that, where the creditor has commenced an action at law against the debtor and has attached his property, a creditor's bill may be maintained in aid of the attachment: 4 Pomeroy's Eq. (3 ed.), § 1415; *Scott* v. *Neely,* 140 U. S. 106, 108 (35 L. Ed. 358, 11 Sup. Ct. Rep. 712); *Cates* v. *Allen,* 149 U. S. 451, 456 (37 L. Ed. 804, 13 Sup. Ct. Rep. 883, 977); *Hollins* v. *Brierfield,* 150 U. S. 371, 378 (37 L. Ed. 1113, 14 Sup. Ct. Rep. 127); *Davidson* v. *Parlin,*

141 Fed. 37, 40 (72 C. C. A. 525); *Moore* v. *Omaha Life Assn.,* 62 Neb. 497 (87 N. W. 321, 322); *Leavengood* v. *McGee,* 50 Or. 233, 237 (91 Pac. 453); *Dawson* v. *Coffcy,* 12 Or. 513 (8 Pac. 838); *Dawson* v. *Sims,* 14 Or. 561 (13 Pac. 506); *Bennett* v. *Minott,* 28 Or. 339 (39 Pac. 997, 44 Pac. 288); *Matlock* v. *Babb,* 31 Or. 516 (49 Pac. 873); *Fleischner* v. *Bank of McMinnville,* 36 Or. 553 (54 Pac. 884, 60 Pac. 603, 61 Pac. 345). Discussing this question, Professor Pomeroy, as cited above, says:

"The general rule is, therefore, that a judgment must be obtained and certain steps taken toward enforcing or perfecting such judgment before a party is entitled to institute a suit of this character. In this there is a uniformity of opinion, but the difficulty arises in determining exactly how far a plaintiff should proceed after he has obtained his judgment. It is, of course, necessary for the creditor to allege and prove that he has taken the necessary proceedings at law before he can show a case requiring the interposition of equity. Whether an equitable suit, analogous to the creditor's suit, will be allowed in aid of the lien created by an attachment before the recovery of judgment is a question to which American courts have given directly conflicting answers."

In *Davidson* v. *Parlin,* 141 Fed. 37 (72 C. C. A. 525), the United States Court of Appeals says:

"Counsel calls his bill a creditor's bill, but it is settled since the beginning that a simple contract creditor has no standing in a court of equity to enforce payment or subject equities until after he has reduced his demand to judgment and has exhausted his remedy at law."

In *Cates* v. *Allen,* 149 U. S. 451 (37 L. Ed. 804, 13 Sup. Ct. Rep. 883), the Supreme Court of the United States says:

"The principle that a general creditor cannot assail as fraudulent against creditors an assignment or transfer of property made by his debtor, until the creditor has established his debt by judgment of a court of competent jurisdiction, and has either acquired a lien upon the property or is in a situation to perfect a lien thereon and subject it to the payment of his judgment, upon the removal of the obstacle presented by the fraudulent assignments or transfer, is elementary. * * The existence of judgment, or of judgment and execution, is necessary: First, as adjudicating and definitely establishing the legal demand; and, second, as exhausting the legal remedy."

In *Leavengood* v. *McGee,* 50 Or. 233 (91 Pac. 453), the rule in this state is stated thus:

"This rule that a creditor must reduce his claim to a judgment before he will be allowed to attack in a court of equity a conveyance of his debtor for fraud is based upon two reasons: (1) That the claim must be a liquidated claim, so that an equity court will not be required to stop and inquire into the validity of the claim. The object of a creditor's bill is to ascertain or determine the amount and validity of the claim or debt, but that is the province of the law. (2) A judgment and the issuance of an execution and its return *nulla bona* is required as an evidence that the remedies at law have been exhausted before resort is made to equity. This is the reason of the law, but there are exceptions to the general rule."

In *Dawson* v. *Coffey,* 12 Or. 513 (8 Pac. 838), Mr. Chief Justice WALDO says:

"It is exclusively the province of a court of law to say that there is a legal debt and that it cannot be made at law. Therefore a creditor's bill 'must be preceded by a judgment at law, establishing the measure and validity of the demand of the complainant for which he seeks satisfaction in chancery.' "

In *Bennett* v. *Minott,* 28 Or. 339 (39 Pac. 997, 44 Pac. 288), the court says:

"On the question whether a creditor must reduce his claim to judgment before he can maintain a creditor's bill to reach assets of his debtor which have been transferred for the purpose of defrauding creditors, the authorities are not harmonious, but in this state it may be regarded as settled that a lien by attachment is sufficient for that purpose."

In *Dawson* v. *Sims,* 14 Or. 561 (13 Pac. 506), the syllabus is:

"The lien created by an attachment duly levied upon the property of the debtor is a sufficient foundation for the jurisdiction of a court of equity to aid, by means of a creditor's suit, in removing fraudulent impediments or conveyances which prevent the creditor from laying hold of the property and applying it to the payment of his debt."

The citations from the authorities made, show that in most jurisdictions it has been held that, before a creditor can maintain a suit in the nature of a creditor's bill to reach assets of his debtor, he must reduce his claim to a judgment and exhaust his remedy at law, but in this and some other states it appears to be settled that the commencement of an action at law, and the attaching of the debtor's property, constitute a sufficient foundation for the commencement of a creditor's suit in aid of the attachment and to reach the assets of the debtor. In this cause it appears that the plaintiff has obtained a judgment against Sam Manerud individually, but that he has not obtained any judgment against said firm or against Quinn, and that he has not sued at law either said firm or said Quinn, and that he has not attached the property of said firm or the property of said Quinn. It is clear, therefore, that the plaintiff cannot maintain this suit against either said firm or said Edward Quinn.

2. The other principal question for decision arises on the plea of estoppel interposed by Manerud & Quinn and John C. Jenkins, referred to, *supra.* These defendants plead that the plaintiff, with full knowledge of the fact that Edward Quinn was a partner of Sam Manerud in the construction of said power canal and of the fact that the plaintiff's contract, by which he agreed to construct a portion of said canal, was made for the benefit of said firm and that it was a partnership matter, etc., elected to bring against Sam Manerud individually the action at law referred to, *supra,* in which he obtained against Sam Manerud said judgment for $4,500, and that said judgment and the proceedings by which it was obtained constitute an estoppel and bar the right of the plaintiff to allege that said firm or said Edward Quinn is liable for said $4,500, and that said judgment is a bar to the plaintiff's right to maintain this suit against said firm or said Quinn, etc. It appears that the $4,500 for which he obtained said judgment is the same $4,500 that the plaintiff seeks to recover in this suit.

3. Debts of partnerships are joint and not several obligations: *North P. L. Co.* v. *Spore,* 44 Or. 476 (75 Pac. 890); *Poppleton* v. *Jones,* 42 Or. 27, 28 (69 Pac. 919).

4. The original demand upon which a judgment is based is merged in the judgment: *Coles* v. *McKenna,* 80 N. J. Law, 48 (76 Atl. 344); *Tootle, Hosea & Co.* v. *Otis,* 1 Neb. (Unof.) 360 (95 N. W. 681, 682); *Mason* v. *Eldred,* 6 Wall. 231 (18 L. Ed. 783); 30 Cyc. 596; 24 Am. & Eng. Ency. of Law (2 ed.), 760–763; 2 Black, Judgment, §§ 770, 776.

In *Coles* v. *McKenna,* 80 N. J. Law, 48 (76 Atl. 344), the facts were that the action was against the West End Company, Meyer, McKenna, and the Cottentine Hotel Company to recover a laundress' bill. Judgment by default was entered against the West End

Company and the Cottentine Hotel Company, and the case thereafter proceeded against the other defendants to trial, and although the attention of the trial court was called to the fact that judgment had already been entered against two of the defendants, and that the plaintiff was thereby precluded from proceeding against the remaining defendants, the trial judge permitted the case to go to the jury, a verdict and a separate judgment were rendered against them, and, on a writ of error, the Supreme Court of New Jersey says: ''It is clear that the plaintiff cannot split up his cause of action in this way. * * He could not have sued McKenna and Meyer alone, and, even if they did not plead the nonjoinder of the other defendants in abatement, nevertheless the defendant might demur or move in arrest of judgment. * * If, therefore, the contract was a joint one, as would appear from the face of the declaration, a judgment could not be entered thereon against two of the four joint contractors, for it would still be open to them to insist that the contract declared upon was a contract of four defendants and not of two alone. * * The cause of action merged in the judgment, and, in case of a joint debt, whatever extinguishes or merges the debt as to one merges it as to all.'' After referring to several cases, the court concludes as follows: '' * * But by entering that judgment she (the plaintiff) evinced an election to hold the corporations and could not thereafter hold Meyer or McKenna. * * The cause of action was single and could not be the basis of two distinct judgments.''

In *Mason* v. *Eldred*, 6 Wall. 238 (18 L. Ed. 783), Mr. Justice FIELD, after reviewing the cases on this subject, says: ''The general doctrine maintained in England and in the United States may be briefly stated. A judgment against one upon a joint contract of several persons bars an action against the others, though the latter were dormant partners of the defendant in the original

action, and this fact was unknown to the plaintiff when that action was commenced. When the contract is joint, and not joint and several, the entire cause of action is merged in the judgment. The joint liabilities of the parties not sued, with those against whom the judgment is recovered, being extinguished, their entire liability is gone. They cannot be sued separately, for they have incurred no several obligations. They cannot be sued jointly with the others, because judgment has been already recovered against the latter, who could otherwise be subjected to two suits for the same cause.''

In *Davidson* v. *Harmon,* 65 Minn. 402 (67 N. W. 1015), the facts were that the plaintiff brought an action against Harmon and Sherburne upon a joint partnership note. Both defendants were served with process. Judgment was entered against Harmon by default. The defendant Sherburne answered, and, after the judgment was entered against Harmon by default, he filed a supplemental answer, setting up the entry of said judgment as a bar to any further proceedings against him. On motion of the defendant Sherburne, judgment was entered in his favor on the pleadings. On appeal to the Supreme Court of Minnesota, that court said: ''That the obligation sued upon was a joint one must be conceded. When an action was brought at common law upon a joint contract, the general rule was that there could be no judgment except in favor of or against all defendants, * * consequently where several persons were summoned as defendants, and one of them pleads, and the others suffer a default, final judgment cannot properly be entered upon the default until the issue as to the other defendants is disposed of, unless the rule has been changed by statute. The plaintiff in this case elected to enter a separate judgment against one of two defendants upon a joint obligation; and this cause being

joint, and not several, it cannot be divided and judgment entered against each one by piecemeal. If this could be done, there might be as many separate judgments as there are different or several defendants, and we know of no principle of law which permits it to be done.'' After discussing the question at length, the court concludes: ''It was therefore irregular for the plaintiff to proceed and take a several judgment against the defendant Harmon; but, having elected to do so, it constitutes a bar to any further recovery against the other defendant, Sherburne.''

In the case of *Lauer* v. *Bandow,* 48 Wis. 638 (4 N. W. 774), the court says:

''It is perfectly well settled that if the holder of a joint debt or obligation sues one of the joint debtors and obtains a judgment thereon against him, and then sues another of the joint debtors for the same debt or obligation, the latter may plead such judgment against his codebtor and bar the action. This is so because the joint debt is merged in the judgment against the debtor first sued, and, being indivisible, it cannot be merged or canceled as to one and existing and operative as to another joint debtor.''

23 Cyc., on page 1028, says:

''Where a contract or obligation which is the subject of an action is a joint contract or obligation, a recovery against one of the joint contractors merges the entire cause of action and bars any subsequent suit on the same obligation against any of the other debtors, or against all jointly; and conversely a judgment against all the joint contractors bars a subsequent suit against any one of them separately. The effect of this principle cannot be avoided by consent of the parties.'' On page 1212 of this volume the rule is stated thus as to partners: ''The liability of the partners for the firm debts is generally held to be joint, so that a judgment against one of the partners for such a debt will bar a

subsequent action against another, even where defendant in the second action was a dormant or secret partner, whose connection with the firm was unknown to plaintiff when the action was brought.''

The twenty-fourth volume of Am. & Eng. Ency. of Law (2 ed.), 761, says:

''In consonance with the doctrine that has been stated, it has been held that a judgment recovered against one of two or more partners on a partnership obligation is a bar to a subsequent suit against the other partner or partners or against all of them jointly, and this is so though the new defendant was a dormant partner at the time of the contract, and this fact was unknown to the plaintiff at the time the judgment was rendered.''

Black, Judgments (2 ed.), Section 776, says:

''On the principle that a judgment against one or two obligors or contractors bars an action against the other, a former recovery against one partner for a firm debt is a bar to a recovery against the other members of the firm in another suit for the same debt. And this is so even when the plaintiff was at first ignorant that the persons whom he afterward pursues were members of the firm.''

It is clear from the authorities that where an obligation is joint and not several, and the creditor sues one of the joint debtors and obtains against him alone a judgment, the obligation sued on is merged in the judgment, and such judgment is a bar to a subsequent action or suit against any of the other joint debtors or to a subsequent action or suit against all of the joint debtors.

5. Where the debt is joint, the creditor must sue all the debtors, or those sued may demur to his complaint on the ground that there is a defect of parties defendant, if the defect appears on the face of the complaint, or, if it does not so appear, the defendant sued may

plead in abatement such defect. But the defendants so sued may waive such defect of parties and permit judgment to be taken against them. A creditor, after obtaining a judgment against one of several joint debtors, cannot obtain a judgment on the same obligation against the other joint debtors, when the latter plead the judgment so obtained in bar.

In this case the plaintiff obtained a judgment against Sam Manerud individually for the sum of $4,500, which the firm owed. The joint obligation of the firm to him merged in this judgment, and by such merger said debt became the individual debt of Sam Manerud, and neither the firm of Manerud & Quinn nor Edward Quinn individually can now be held for such debt.

A creditor holding a joint obligation against several persons cannot sue one of them at a time and obtain as many judgments as there are joint debtors. He has the right to obtain but one judgment or decree, and, when he has obtained one judgment or decree on a joint obligation, such judgment or decree is a bar to any subsequent action or suit on such obligation.

The plaintiff should have brought his original action against Manerud & Quinn and have obtained a judgment against them jointly for the $4,500. By suing Manerud alone, he elected to look to him for the payment of his debt, and he cannot now recover from Quinn or the firm.

6. At the argument considerable stress was placed on the stipulation, dated November 11, 1910, set out herein, but a careful reading of this agreement will show that it amounted to nothing material to any issue in this case. Edward Quinn signed it, but he did not agree by such stipulation to do anything. It was agreed by that paper that Sam Manerud and Edward Quinn might pay to the plaintiff $1,000 in cash and deliver to him their note for $3,500, but they did not agree that they would pay any sum or give any note.

However, said stipulation did provide that, if said $1,000 should not be paid and the note for $3,500 should not be executed, the plaintiff should have the right to take judgment, without trial, against the defendant Sam Manerud for $4,500, and judgment was taken accordingly. Said stipulation does not mention the firm of Manerud & Quinn, nor does it imply that Quinn was in any manner or to any extent liable for said $4,500.

The plaintiff failed to prove that there was any agreement that any part of said $4,500 judgment was to be paid by said firm or by said Quinn or out of the assets of said firm. The plaintiff obtained a judgment against the defendant Sam Manerud, as stated, *supra,* and had issued a writ of attachment against his property, and attempted to attach, in the hands of the City of Eugene, what said city owed Manerud on said judgment.

7. Under the law, the plaintiff's judgment against Manerud is a claim against him individually, but it is not a debt of the partnership, and the plaintiff is not entitled to be paid out of the assets of the firm. He is not entitled to any part of the proceeds of the judgment of said firm against said city, unless there is enough of said judgment to pay all of the debts of said firm in full and leave a balance to be divided between Manerud and Quinn. If there were enough of the assets of said firm to pay all of its debts and leave a balance to be divided between the members of said firm, the plaintiff would be entitled to receive one half of said balance, as he is entitled to the interest of Manerud therein.

According to a settlement made between said Sam Manerud and Edward Quinn as to their partnership liabilities, after they had ceased to do any business, and after this suit was brought, they owed the following sums: "John C. Jenkins, $3,084.38; Jas. B. Kerr, $512.83; S. M. Calkins, $211.40; First National Bank of

Eugene, $1,093.15; Mrs. Olivia Manerud, $124.82; H. L. Brown, $4.20; P. D. Newell, $34.60; H. Potter, $17.60; C. B. Ryckman, $14.20; R. S. Bryson, $10.20; Wm. Morris, $14.20; City of Eugene, $75; and Edward Quinn, $2,366.03." These items aggregate the sum of $7,409.22.

The judgment of *Manerud & Quinn* v. *City of Eugene* was rendered on December 22, 1910, and it amounted at that time to only $6,525.90. It bears interest at 6 per cent per annum, unless something has transpired to stop the interest; but when the firm had their accounting and allowed the accounts referred to, they became accounts stated and bore interest from the date of said accounting. The claim due the First National Bank of Eugene, and possibly others, bore interest prior to said accounting. If the interest is computed on said judgment from the date of its rendition to the present time and on the partnership debts from the date that they were allowed at said accounting, and such interest is added to the principal of said debts, it will appear that the debts of said firm exceed, in the aggregate, the amount of said judgment. Said judgment is the sole asset of said firm. Hence there is nothing going to Manerud from said firm, and there is nothing that we can decree to the plaintiff, as his right to recover is confined to the part of said judgment going to Manerud on the final settlement of the business of said firm. As the partnership is insolvent, there is nothing left for either partner or for the plaintiff.

The decree of the court below is reversed and this suit dismissed. Neither party will recover costs and disbursements in this court or in the court below.

REVERSED: SUIT DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.